[Cite as *Fed. Home Loan Mtge. Corp. v. Koch*, 2013-Ohio-4423.]

## IN THE COURT OF APPEALS

## ELEVENTH APPELLATE DISTRICT

## GEAUGA COUNTY, OHIO

| | | |
|---|---|---|
| FEDERAL HOME LOAN<br>MORTGAGE CORPORATION, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2012-G-3084** |
| PAUL E. KOCH, et al., | : | |
| Defendants-Appellants. | : | |

Civil Appeal from the Geauga County Court of Common Pleas, Case No. 11F000182.

Judgment: Affirmed.

*Kriss D. Felty*, *Antonio J. Scarlato*, and *David M. Gaunter*, Felty & Lembright Co., L.P.A., 1500 West Third Street, Suite 400, Cleveland, OH 44113 (For Plaintiff-Appellee).

*David N. Patterson*, 33579 Euclid Avenue, Willoughby, OH 44094-3199 (For Defendants-Appellants).

THOMAS R. WRIGHT, J.

{¶1} This appeal is from a final order in a foreclosure action before the Geauga County Court of Common Pleas. Appellants, Paul E. Koch and Andrew E. Koch, contest the trial court's decision denying their Civ.R. 60(B) motion for relief from a prior default judgment. Specifically, they submit that the default judgment should have been set aside because they were not afforded a full opportunity to be heard on the substance of the underlying complaint.

{¶2} The foreclosure case pertained to real property located at 10080 Bell

Road in Newbury, Ohio. In February 2011, appellee, Federal Home Loan Mortgage Corporation, initiated a foreclosure action regarding the property, naming appellants and other members of the Koch family as defendants. In its complaint, appellee alleged that it was the present holder of the original promissory note and mortgage executed by appellants. The complaint further alleged that appellants were in default on the note, and that the sum of $107,384.95 was owed pursuant to the note's acceleration clause.

{¶3} A copy of the promissory note between appellants and the original lender, Park View Federal Savings Bank, was not attached to the complaint. However, appellee did attach a copy of the mortgage that appellants executed in conjunction with the promissory note in December 2001. Also accompanying the complaint as Exhibit C was a document entitled "Assignment of Mortgage," in which Park View Federal sold, assigned, and transferred, for valuable consideration, the "Koch" mortgage to appellee. The assignment document was executed by an executive vice president of Park View Federal, and was dated October 8, 2010. In addition, attached to the document was the affidavit of a notary public, stating that the executive vice president appeared before the notary and acknowledged that he signed the assignment of the mortgage on behalf of Park View Federal.

{¶4} Copies of appellee's complaint were sent by certified mail to appellants at three different addresses. Within approximately 40 days, service of the complaint was perfected. However, instead of submitting an answer, appellants filed a written request that the case be referred to arbitration. The trial court granted the request, and the first mediation session was scheduled for late May 2011. As part of its mediation order, the court stayed all further proceedings in the case.

{¶5} After the first mediation session, a second session was scheduled for late

2

July 2011. In his written status report issued after the second session, the mediator indicated that, even though the parties engaged in mediation during the first session, no settlement was reached. In light of the status report, the trial court issued a new order lifting the stay and the case was returned to the court's active docket. The new order also stated that any party who had not filed a required response to a pleading or motion would be given 30 days in which to comply.

{¶6} Notwithstanding the specific reference in the trial court's order concerning the need for a responsive pleading, appellants never filed an answer to the foreclosure complaint. In September 2011, appellee moved for default judgment against appellants on the entire complaint. Attached to appellee's motion was a proof of service stating that a copy of the motion had been mailed to each appellant.

{¶7} Fifteen days after the filing the default motion, the trial court issued an order scheduling the motion for an oral hearing on November 30, 2011. At the bottom of the one-page entry was language requiring the clerk of courts to mail copies of the scheduling order to each appellant.

{¶8} Neither appellant attended the "default" hearing. Three days following the hearing, the trial court issued a final judgment against appellants for the entire amount sought under the complaint. At the end of this judgment, the court ordered that, unless appellants paid the total amount owed within three days, their equity of redemption and dower would be foreclosed, and the underlying real estate would be sold by the county sheriff.

{¶9} Within days after the entry of the default judgment, appellee began to take the requisite steps to ensure that the sheriff's sale would proceed. Ultimately, the sheriff scheduled the sale of the property for March 22, 2012.

**{¶10}** On February 3, 2012, approximately 60 days after the default judgment was issued, appellants moved the trial court for relief from the judgment under Civ.R. 60(B). As the primary basis for the motion, they asserted that default should not have been entered because they had previously made an appearance in the action and had been engaged in negotiations with appellee throughout the pendency of the matter. In addition, appellants argued that the judgment could not be allowed to stand because appellee lacked standing to maintain a foreclosure proceeding.

**{¶11}** An oral hearing on the motion for relief from judgment was set for March 27, 2012. Since the hearing date was five days after the scheduled date for the sheriff's sale, appellants moved the trial court to postpone the sale until the merits of their 60(B) motion could be decided. On March 19, 2012, the trial court granted a stay of the sale, but conditioned it upon appellants' posting of a bond for $100,000. When appellants did not timely post the required bond, the sheriff's sale went forward, and the sale was subsequently confirmed by the trial court.

**{¶12}** Upon appellants' own request, the oral hearing on the Civ.R. 60(B) motion was continued until April 30, 2012. Approximately 20 days after that hearing was held, the trial court overruled appellants' motion for relief. In appealing the 60(B) determination to this court, appellants raise two assignments of error:

**{¶13}** "[1.] The record is clear and convincing that the trial court erred to the prejudice of appellants and abused its discretion by denying appellants' Civil Rule 60(B) motion to set aside default judgment, particularly without benefit of an evidentiary hearing.

**{¶14}** "[2.] The record is clear and convincing that the trial court erred to the prejudice of appellants and abused its discretion by granting appellee's motion for a

4

default judgment and denying appellants' motion to set aside in favor of appellee on the foreclosure complaint."

{¶15} Under their first assignment, appellants maintain they were entitled to relief from the foreclosure judgment because granting of default judgment was not warranted. They argue that, despite the fact that they never filed an answer to appellee's complaint, they still should have been allowed to proceed on the merits because they previously made an appearance in the case. In support of their argument, appellants emphasize that they had participated in the litigation by filing a request for mediation.

{¶16} However, the mere fact that appellants made an appearance in the case is not dispositive of whether a default judgment was justified. In relation to the procedure governing default judgment, Civ.R. 55(A) provides:

{¶17} "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules, the party entitled to a judgment by default shall apply in writing or orally to the court therefore; * * *. If the party against whom judgment by default is sought has appeared in the action, he * * * shall be served with written notice of the application for judgment at least seven days prior to the hearing on such application."

{¶18} Given that Civ.R. 55(A) states a specific procedure for obtaining a default judgment even after the defending party has made an appearance, appellant's general argument under this assignment is not a legally sound reason for vacating or setting aside a default judgment. That is, a party who has appeared in a civil action can still be subject to a default judgment if he has otherwise failed to defend the case and received proper notice of the default judgment motion. *See Rotatori, Bender, Gragel. Stoper, &*

5

*Alexander, L.P.A. v. Signer*, 8th Dist. Cuyahoga No. 86454, 2006-Ohio-1354, ¶12-15.

{¶19} On appeal, appellants assert that they were denied a full opportunity to be heard before appellee's "default" motion was granted. However, in making this assertion, they have not contested the following: (1) at the outset of the action, they were served with a copy of appellee's foreclosure complaint; (2) neither appellant filed an answer to the complaint throughout the entire pendency of the action; (3) in filing its motion for a default judgment, appellee attached a proof of service stating that copies of the motion were mailed to appellants; (4) copies of the trial court's judgment scheduling the "default" motion for a hearing were also mailed to appellants; (5) the judgment stated that a responsive pleading was necessary if one had not previously been filed; and (6) notices of both the motion and judgment were given more than seven days before the date of the hearing.

{¶20} In light of the foregoing, appellants' failure to appear at the "default" hearing warranted the default judgment. Not only did appellants fail to properly defend the case by filing an answer, they were also given notice of the "default" motion and hearing.

{¶21} As a separate argument under their first assignment, appellants contend that they were prejudiced when no oral hearing was held on their motion to vacate prior to the issuance of the trial court's denial. As to this point, the record readily shows that an oral hearing on their motion was scheduled almost immediately after it was filed; in addition, a new date for the hearing was set when appellants' trial counsel requested a continuance due to a conflict in scheduling. Although the record does not contain a transcript of that hearing, there is nothing before this court to indicate that the hearing was cancelled or otherwise did not go forward. As a result, the record simply does not

6

support a finding of prejudice.

{¶22} The record demonstrates that appellants failed to properly defend the case and notice was given to them before the default hearing was held. Therefore, the default judgment was warranted. Appellants' first assignment lacks merit.

{¶23} Under their second assignment, appellants contest the merits of the trial court's determination to grant the default judgment and order foreclosure of their interest in the subject property. According to them, appellee was not entitled to prevail on its foreclosure claim because its complaint was legally insufficient to establish that it had standing as the real party in interest to sue them on the promissory note and mortgage. Specifically, appellants maintain that appellee could not proceed because there was no showing that appellee was the present holder of the underlying promissory note and mortgage.

{¶24} In a recent decision expressly addressing the relevancy of standing in a foreclosure action, the Supreme Court of Ohio stated that standing is a jurisdictional requirement which must be met before a common pleas court can proceed. *Federal Home Loan Mort. Corp. v. Schwartzwald,* 134 Ohio St.3d 13, 2012-Ohio-5017, ¶22. In order to have standing to bring a foreclosure case, the plaintiff must demonstrate that it has an interest in either the promissory note or mortgage. *Federal Home Loan Mort. Corp. v. Rufo*, 11th Dist. Ashtabula No. 2012-A-0011, 2012-Ohio-5930, ¶18. The requirement of an "interest" can be met by showing an assignment of either the note or mortgage. *Id.* at ¶44. In addition, this interest must have existed at the time the foreclosure complaint was filed; there can be no standing to proceed if the interest is acquired when the action is already pending. *Schwartzwald*, at ¶25-27.

{¶25} As noted above, appellee did not attach a copy of the promissory note

7

between appellants and the original lender, Park View Federal. However, after the underlying case remained pending for seven months, appellee moved to incorporate into its complaint a copy of the promissory note. The final page of this copy contains a stamped statement that had the effect of changing the promissory note to bearer paper. Furthermore, the stamped statement is signed by two executive vice presidents of Park View Federal. However, because the stamped statement is not dated, it cannot be determined when the note became bearer paper or when appellee took possession of the document.

{¶26} Unlike the promissory note, a copy of the mortgage on the subject property was attached to appellee's complaint, along with a copy of a document captioned "Assignment of Mortgage." The "assignment" document was also signed by an executive vice president of Park View Federal, and purported to transfer appellants' mortgage to appellee for valuable consideration. In addition, the document is dated for October 8, 2010, approximately four months before appellee instituted the foreclosure proceeding.

{¶27} R.C. 5301.32 expressly states that a mortgage can be assigned by a separate instrument of assignment, so long as two requirements are satisfied: (1) the instrument must be "acknowledged" in accordance with R.C. 5301.01; and (2) it must be recorded in the appropriate book of the county recorder. As to the first requirement, R.C. 5301.01(A) states that, in executing a deed or mortgage, the grantor or mortgagor must acknowledge the execution before, inter alia, a notary public, who must certify that acknowledgement.

{¶28} Attached to the copy of the assignment document was a copy of a written certification by a notary public. As part of the certification, the notary public indicated

8

that the executive vice president executed the assignment instrument before her, and that he acknowledged to her that he was signing it in the name of Park View Federal. Thus, since the certification was sufficient to satisfy R.C. 5301.01(A), the first requirement for a valid assignment of a mortgage was met.

{¶29} Regarding the "recording" requirement, the assignment document does not contain any markings establishing that the instrument had been filed with the Geauga County Recorder. However, the record further shows that, on the same date appellee filed its foreclosure complaint, it also submitted a preliminary judicial report on the subject property. The submission of this report is mandated under R.C. 2329.191 and Loc.R. 12 of the Geauga County Court of Common Pleas. As part of its description of the record title for the property, the report indicated that, on November 2, 2010, the county recorder received and recorded the October 8, 2010 assignment of the mortgage from Park View Federal to appellee. Therefore, in instituting the underlying proceeding, appellee presented some documentation showing that the two statutory requirements for a valid assignment of appellants' mortgage had been met, and that the assignment was finalized prior to the filing of the foreclosure action.

{¶30} Before this court, appellants assert that appellee failed to "prove" a proper assignment of the mortgage. Yet, in making this general assertion, appellants have not contested the authenticity of the "assignment" document attached to appellee's complaint. Rather, they only contend that appellee failed to show that the assignment of the mortgage was properly recorded.

{¶31} Pursuant to R.C. 2329.191(B), the purpose of a final judicial report in a foreclosure action is to update "the state of the record title to that real estate from the effective date of the preliminary judicial report through the date of lis pendens * * *." In

9

light of this statutory language, it follows that the purpose of the preliminary judicial report is to establish the state of the record title to the underlying property as of the date of the initiation of the action. Consequently, the preliminary judicial report in this case constituted some evidence that the assignment of appellant's mortgage to appellee was recorded in accordance with the governing statutes before this action was instituted.

{¶32} In conjunction with the foregoing analysis, this court would reiterate that appellants did not assert their challenge to appellee's standing until after the trial court issued the default/foreclosure judgment. If the challenge had been raised prior to the "foreclosure" determination, appellants would have had no burden of proof in regard to the existence of a proper assignment of the mortgage to appellee. However, once the foreclosure ruling was rendered and appellants were forced to challenge standing in a post-judgment motion to vacate, the burden of proof switched to them as the moving party. Given this, the defendant in a foreclosure case is not entitled to prevail on a motion to vacate a default judgment when he failed to support his motion with evidence that the plaintiff lacked standing to bring the action. *U.S. Bank, N.A. v. Kapitula*, 12th Dist. Clermont No. CA2012-08-058, 2013-Ohio-2638, ¶6.

{¶33} Even though appellants attached two affidavits to their motion for relief from the foreclosure judgment, none of the averments in the documents addressed the issue of whether a proper assignment of the mortgage had occurred. To this extent, appellants failed to refute in any way the materials accompanying appellee's complaint, including the copy of the assignment instrument and the preliminary judicial report. As a result, the trial court justifiably held that there was no factual dispute that appellee had obtained ownership of appellants' mortgage through an assignment from Park View Federal prior to bringing the foreclosure action.

{¶34} In light of our conclusion as to the status of the mortgage, the issue then becomes whether the lack of any evidence concerning the status of the promissory note deprived appellee of standing to proceed against appellants. As to this point, appellee expressly alleged in its complaint that it was the present holder of the promissory note between appellants and Park View Federal. Given that appellants never filed an answer to the complaint, they admitted appellee's allegation as to the note for purposes of this action. *See Favors v. Burke*, 8th Dist. Cuyahoga No. 98617, 2013-Ohio-832, ¶16. Furthermore, in moving for relief from the foreclosure judgment, appellants again failed to present any evidence that appellee was not the holder of the promissory note prior to filing the foreclosure complaint.

{¶35} Alternatively, the governing case law supports the proposition that, under many circumstances, the submission of evidence establishing the valid assignment of the mortgage will also be sufficient to show simultaneous transfer of the promissory note. Without providing a substantial explanation, the Supreme Court in *Schwartzwald* stated that the plaintiff-mortgage company did not have standing to invoke the jurisdiction of the common pleas court because "it failed to establish an interest *in the note or mortgage* at the time it filed suit, * * *." (Emphasis added.) *Schwartzwald*, 2012-Ohio-5017, at ¶28. In applying *Schwartzwald*, this court has indicated that the opposite is also correct; i.e., standing to proceed in a foreclosure case exists if it is demonstrated that the plaintiff had a pre-existing interest in either the note *or* the mortgage. *Rufo*, 2012-Ohio-5930, at ¶18.

{¶36} Historically, Ohio courts have recognized that "the negotiation of a note operates as an equitable assignment of the mortgage, even though the mortgage is not assigned or delivered." *U.S. Bank Nat. Assn. v. Marcino*, 181 Ohio App.3d 328, 2009-

Ohio-1178, ¶52 (7th Dist.), citing *Kuck v. Sommers*, 100 N.E.2d 68, 75, 59 Ohio Abs. 400 (1950). In recent years, Ohio courts have extended the application of this rule to situations in which the mortgage is assigned without an express transfer of the note. In *Bank of New York v. Dobbs*, 5th Dist. Knox No. 2009-CA-000002, 2009-Ohio-4742, the Fifth Appellate District cited Section 5.4 of the Restatement III, Property in support of its analysis on the issue:

{¶37} "The Restatement asserts as its essential premise * * * that it is nearly always sensible to keep the mortgage and the right of enforcement of the obligation it secures in the hands of the same party. This is because in a practical sense separating the mortgage from the underlying obligation destroys the efficacy of the mortgage, and the note becomes unsecured. The Restatement concedes on rare occasions a mortgagee will disassociate the obligation from the mortgage, but courts should reach this result only upon evidence that the parties to the transfer agreed. Far more commonly, the intent is to keep the rights combined * * *. Thus, the Restatement proposes that transfer of the obligation also transfers the mortgage and vice versa. Section 5.4(b) suggests[:] 'Except as otherwise required by the Uniform Commercial Code, a transfer of a mortgage also transfers the obligation the mortgage secures unless the parties to the transfer agree otherwise.' *Thus, the obligation [i.e., the note] follows the mortgage if the record indicates the parties so intended.*" (Emphasis added.) *Id.* at ¶28.

{¶38} In *Rufo*, 2012-Ohio-5930, at ¶44, this court found the analysis of the Fifth Appellate District in *Dobbs* to be persuasive. We further held that the parties' intent to transfer both the mortgage and the note can be inferred from language in both documents which cross-reference each other. *Id.* at ¶42-43.

12

{¶39} In our case, the mortgage has a specific provision stating that, as a security instrument, the mortgage "secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of the Borrower's covenants and agreements under the Security Instrument and the Note." Moreover, the "definitions" section of the mortgage states that the term "note" is meant to refer to the promissory note that appellants signed on December 15, 2001. Similarly, the promissory note has a separate provision indicating that the debt is secured under a "Security Instrument," i.e., mortgage, signed the same date as the note, and that the mortgage is intended to give additional protection to the "Note Holder" for any losses stemming from a breach of the note.

{¶40} Pursuant to *Rufo* and *Dobbs*, the foregoing cross-references in the mortgage and the promissory note are sufficient to support an inference that the original parties to the instruments intended for the note to implicitly "follow" the mortgage if the latter instrument was assigned without an express transfer of the note. Therefore, once the assignment of the mortgage was completed when it was recorded on November 2, 2010, appellants' promissory note was implicitly transferred from Park View Federal to appellee. In turn, this means that appellee had an interest in both the promissory note and mortgage before the foreclosure action was instituted in February 2011.

{¶41} Taken as a whole, the record before the trial court supported the conclusion that appellee had standing to bring the underlying action against appellants. Hence, appellants were not entitled to relief from the default/foreclosure judgment on that basis .

{¶42} In addition to their "standing" argument, appellants raised two other points in support of their request to set aside the default judgment: (1) the promissory note was

13

not enforceable because one of the appellants, Paul E. Koch, never signed it; and (2) appellee failed to present sufficient evidence at the "default" hearing to demonstrate that they owed the sum of $107,384.95. Unlike their "standing" argument, these two points do not assert challenges to the trial court's authority to resolve the underlying dispute. Rather, they only pertain to the final merits of the trial court's analysis in ordering foreclosure as part of the default judgment.

{¶43} To succeed on a Civ.R. 60(B) motion, the moving party must show, inter alia, that he is entitled to relief under one of the five grounds expressly listed in the rule. *Melinich v. Melinich*, 195 Ohio App.3d 451, 2011-Ohio-5068, ¶18 (2nd Dist.), quoting *GTE Automatic Elec., Inc. v. ARC Industries, Inc.*, 47 Ohio St.2d 146, paragraph two of the syllabus (1976). Although Civ.R. 60(B)(1) refers to a "mistake" as a possible basis for relief, the courts of this state have held that the term does not encompass a trial court's error in rendering its final judgment; instead, relief can only be granted for a "mistake" of a party or his legal representative. *Id.* at ¶22; *Foy v. Trumbull Correctional Inst.*, 10th Dist. Franklin No. 11AP-464, 2011-Ohio-6298, ¶11. To this extent, the merits of a final judgment cannot be contested in a Civ.R. 60(B) motion for relief from judgment, but only through a direct appeal of the judgment. *Id.* Therefore, since appellants never pursued a direct appeal from the final foreclosure order in the default judgment, they have waived their ability to challenge the basic enforceability of the promissory note.

{¶44} As to the calculation of the total amount owed on the loan, there is authority for the proposition that 60(B) relief should be granted from a default judgment when the trial court abuses its discretion in failing to hold an oral hearing on damages. *See, e.g., Heckman v. Porter*, 5th Dist. Stark Nos. 2002CA00380 and 2002CA00381,

14

2003-Ohio-3135. However, this proposition has only been followed in cases involving claims for unliquidated damages. *Id.* at ¶13; *Qualchoice, Inc. v. Brennan*, 11th Dist. Lake No. 2008-L-143, 2009-Ohio-2533, ¶23. When the plaintiff is seeking only liquidated damages, a default judgment can be granted without proof of damages. *Qualchoice*, at ¶21, quoting *Buckeye Supply Co. v. Northeast Drilling Co.*, 24 Ohio App.3d 134, paragraph one of the syllabus (9th Dist.1985).

{¶45} Damages are considered "liquidated" in nature when they can be precisely calculated from, inter alia, the terms of an agreement. *Id.* at ¶23. Based upon this, proof of damages is not necessary in a "default" proceeding when the underlying claim is predicated upon an alleged breach of a promissory note. *Farmers & Merchants State & Savings Bank v. Raymond G. Barr Enterprises, Inc.*, 6 Ohio App.3d 43, 44 (4th Dist.1982). In this case, appellants have failed to cite any unusual circumstances that would have warranted a separate hearing on damages. Therefore, as there has been no showing that the trial court abused its discretion during the "default" proceeding, appellants were not entitled to any Civ.R. 60(B) relief.

{¶46} As appellants failed to establish any viable basis for vacating or granting relief from the default/foreclosure judgment, the denial of their post-judgment motion was justified. Thus, their second assignment is not well-taken.

{¶47} Pursuant to the foregoing, both of appellants' assignments of error do not have merit. Accordingly, it is the judgment and order of this court that the judgment of the Geauga County Court of Common Pleas is affirmed.

TIMOTHY P. CANNON, P.J., concurs,

DIANE V. GRENDELL, J., concurs in judgment only.

15