[Cite as *Bank of New York Mellon v. Clancy*, 2014-Ohio-1975.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

BANK OF NEW YORK MELLON

     Plaintiff-Appellee

v.

HOWARD CLANCY, et al.

     Defendant-Appellant


Appellate Case No.    25823

Trial Court Case No.   2011-CV-6259


(Civil Appeal from
 Common Pleas Court)

. . . . . . . . . . .

O P I N I O N

Rendered on the 9th day of May, 2014.

. . . . . . . . . . .

JAMES A. TULLY, Atty. Reg. No. 0084018, JASON A. WHITACRE, Atty. Reg. No. 0077330, ASHLEY MUELLER, Atty. Reg. No. 0084931, 4500 Courthouse Boulevard, Suite 400, Stow, Ohio 44224
     Attorneys for Plaintiff-Appellee

BRUCE M. BROYLES, Atty. Reg. No. 0042562, 5815 Market Street, Suite 2, Boardman, Ohio 44512
     Attorney for Defendant-Appellant-Vicki Clancy

DOUGLAS TROUT, Atty. Reg. No. 72027, 301 West Third Street, 5th Floor, Dayton, Ohio 45422
     Attorney for Defendant-Appellee-Montgomery County Treasurer

HOWARD CLANCY, 2190 Burnside Drive, Dayton, Ohio 45439

Defendant-Appellant-Pro Se

. . . . . . . . . . . . .

WELBAUM, J.

{¶ 1}    Defendant-Appellant, Vicki Clancy, appeals from a trial court decision overruling her motion to vacate a judgment and decree of foreclosure and for a stay of execution. Clancy contends that the trial court erred in denying the motion to vacate because Plaintiff-Appellee, Bank of New York Mellon fka The Bank of New York as Trustee for the Certificateholders of the CWABS, Inc., Asset-Backed Certificates, Series 2005-9 ("Mellon"), lacked standing to file the complaint in foreclosure.

{¶ 2}    We conclude that Clancy lacked standing to challenge the validity of the note and mortgage assignment. Clancy also failed to meet her burden of providing evidence about Mellon's alleged lack of standing. And finally, because Mellon had standing to file the foreclosure action, the trial court had jurisdiction over the case. Accordingly, the judgment of the trial court will be affirmed.

I. Facts and Course of Proceedings

{¶ 3}    On August 31, 2011, Mellon filed a complaint in foreclosure against Howard Clancy, Vicki Clancy, Countryside Mortgage Ventures, LLC, and the Montgomery County Treasurer. Mellon attached a copy of a promissory note to the complaint as Exhibit A. The note bore the signatures of Howard and Vicki Clancy, was in the amount of $173,600, and was payable to the "Lender," described as Countrywide Mortgage Ventures, LLC dba Paramount Mortgage. Under the terms of the note, the Clancys agreed to pay monthly payments of

$1,381.24, at an interest rate of 8.75% per month, beginning September 1, 2005.   The note, which was dated July 20, 2005, stated that: "I understand that the Lender may transfer this note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the Note Holder."   Doc. #1 , Ex. A., p. 1.

{¶ 4}     The note additionally referred to a mortgage, dated the same date as the note, which was being tendered to protect the note holder from possible losses if the borrowers failed to pay as agreed.   However, the note did not contain any endorsements, nor was it endorsed in blank.

{¶ 5}     Mellon also attached a copy of the mortgage to the complaint, as Exhibit B. The mortgage was dated July 20, 2005, and specifically referenced the note that the Clancys had signed.   *See* Doc. #1, Ex. B., p. 2.     According to the mortgage, Mortgage Electronic Registration Systems, Inc. ("MERS"),was identified as the mortgagee under the security interest.  In the mortgage agreement, the Clancys mortgaged and granted a security interest in property located at 1816 Lord Fitzwalter Drive, Miamisburg, Ohio, to MERS "(solely as nominee for Lender [Countrywide] and Lender's successors and assigns), and to the successors and assigns of MERS * * *."   *Id.* at p. 3.

{¶ 6}     Finally, Mellon attached an assignment of mortgage to the complaint, as Exhibit C.   This assignment was dated May 12, 2011, and indicated that MERS had assigned the Clancys' mortgage to Mellon as of that date.   The assignment granted Mellon "all beneficial interest" in the mortgage described in the assignment, "together with the note(s) and obligations therein described and the money due and to become due thereon with interest and all rights accrued or to accrue under said Mortgage."   Doc. #1, Ex. C., p. 1.

{¶ 7}     After the Clancys failed to respond to the complaint, Mellon filed a motion for default judgment in November 2011.   The trial court granted the motion on November 8, 2011, and ordered foreclosure.   Subsequently, the property was scheduled for sale on several dates, but Mellon withdrew the order of sale in an attempt to avoid foreclosing.   However, the property was ultimately sold at a sheriff's sale on May 24, 2013.   On June 6, 2013, the trial court filed an entry confirming the sheriff's sale and ordering distribution.    The court also cancelled the existing mortgage on the property.

{¶ 8}     On June 17, 2013, Vicki Clancy filed a motion to vacate the judgment entry and decree of foreclosure that had been entered in November 2011.   Clancy argued that the note had no endorsements, and that the transfer of the mortgage to Mellon violated the terms of a trust in which the mortgage had been included.   Clancy also asked the court to issue a stay of execution and permit her to stay in the premises.

{¶ 9}     In July 2013, the trial court issued a decision overruling the motion to vacate. The court held that Vicki Clancy lacked standing to raise the argument that the mortgage was invalid.   In addition, the court concluded that Mellon had standing to initiate the foreclosure action.   Clancy appeals from the decision overruling her motion to vacate and for a stay of execution.

II.   Did the Trial Court Err in Overruling the Motion to Vacate?

{¶ 10}    Vicki Clancy's sole assignment of error states that "[t]he trial court erred in denying the motion to vacate."   Under this assignment of error, Clancy contends that the mortgage was not properly transferred to the CWABS, Inc. Asset-Back Certificates, Series

2005-9 trust ("Trust"), and that the transfer, therefore, was void under New York law, which applied to the Trust. Clancy also contends that Mellon did not possess the promissory note. Based on these facts, Clancy argues that Mellon did not have an interest in the promissory note or in the mortgage when suit was filed, and, thus, lacked standing to file the action.

{¶ 11} "In order to have standing to bring a foreclosure case, the plaintiff must demonstrate that it has an interest in either the promissory note or mortgage." *Fed. Home Loan Mtge. Corp. v. Koch*, 11th Dist. Geauga No. 2012-G-3084, 2013-Ohio-4423, ¶ 24, citing *Fed. Home Loan Mort. Corp. v. Rufo*, 11th Dist. Ashtabula No.2012-A-0011, 2012-Ohio-5930, ¶ 18. *But see BAC Home Loan Serv. v. McFerren*, 2013-Ohio-3228, 6 N.E.3d 51, ¶ 13 (9th Dist.) (holding "that [*Federal Home Loan Mort. Corp. v.] Schwartzwald[*, 134 Ohio St.3d 13, 2012-Ohio-5017, 979 N.E.2d 1214,] did not overturn long-standing property and foreclosure principles and, therefore, [the plaintiff] had to be holder of the Note and the Mortgage at the time it initiated this action order to have standing").[1]

{¶ 12} "The requirement of an 'interest' can be met by showing an assignment of either the note or mortgage." *Koch* at ¶ 24, citing *Rufo* at ¶ 44. *But see McFerren* at ¶ 13 (requiring a showing of an interest in both the note and mortgage). "In addition, this interest must have existed at the time the foreclosure complaint was filed; there can be no standing to proceed if the

---

[1] The majority of districts considering this issue, including the Twelfth, "Eighth, Eleventh, Tenth, Seventh, and Sixth Districts have all found that the plain language of *Schwartzwald* only requires a plaintiff to establish an interest in the note *or* mortgage at the time the suit is filed." (Emphasis sic.) *SRMOF 2009-1 Trust v. Lewis*, 12th Dist. Butler Nos. CA2012-11-239, CA2013-05-068, 2014-Ohio-71, ¶ 16, citing *Bank of New York Mellon v. Burke*, 12th Dist. Butler No. CA2012-12-245, 2013-Ohio-2860, ¶ 13; *CitiMortgage, Inc. v. Patterson*, 8th Dist. Cuyahoga No. 98360, 2012-Ohio-5894, ¶ 21; *Koch*, 11th Dist. Geauga No.2012-G-3084, 2013-Ohio-4423, at ¶ 24; *U.S. Bank Natl. Assn. v. Gray*, 10th Dist. Franklin No. 12AP-953, 2013-Ohio-3340, ¶ 27; *CitiMortgage, Inc. v. Loncar*, 7th Dist. Mahoning No. 11 MA 174, 2013-Ohio-2959, ¶ 15; and *Bank of New York Mellon v. Matthews*, 6th Dist. Fulton No. F-12-008, 2013-Ohio-1707, ¶ 11.

interest is acquired when the action is already pending." *Koch* at ¶ 24, citing *Schwartzwald* at ¶ 25–27.

{¶ 13}    We need not resolve the conflict regarding whether an interest in both the note and mortgage is required, because Clancy lacked standing to challenge the mortgage assignment. In addition, Clancy failed to submit evidence indicating that the transfer of the mortgage was void. And finally, Mellon had standing to prosecute the action even if an interest in both the note and mortgage is required.

A.    Clancy Failed to Provide Evidence Showing Mellon's Lack of Standing.

{¶ 14}    In support of her motion to vacate, Clancy filed a Prospectus and a Prospectus Supplement (Supplement). The Prospectus, which is dated June 10, 2005, indicates that CWABS, Inc., who is designated as the "Depositor," would be transferring assets to various trusts. The Prospectus indicates that these trusts would be identified in a prospectus supplement for each particular trust, and would generally consist of several kinds of mortgage loans.

{¶ 15}    The loan involved in the case before us was part of a trust called the CWABS Asset-Backed Certificates Trust 2005-9. The Supplement applicable to this trust is dated September 22, 2005.

{¶ 16}    In the Supplement, CWABS, Inc., is again designated as the "Depositor," and Countrywide Home Loans, Inc, and one or more special purpose entities established by Countrywide Financing Corporation or one of its subsidiaries, are designated as the "Sellers." The Bank of New York (currently Mellon) is designated as the "Trustee," and Countrywide Home Loans Servicing, LP, is designated as the "Master Servicer." According to the

Supplement, the closing date for the Trust was scheduled for or about September 28, 2005. Doc. #94, Ex. 1, p. S-1.

{¶ 17}   The Supplement  indicates that pursuant to a pooling and service agreement dated September 1, 2005, the Depositor, CWABS, Inc., was to convey all its interest in the initial mortgage loans and all other assets to the Trustee, for the benefit of the certificateholders in the Trust.  *Id.* at S-21.   The Depositor was also required to deliver various listed documents, which would constitute the "Trustee's Mortgage File."  *Id*. at p. S-22.   These documents included:

(1) the original Mortgage Note, endorsed by manual or facsimile signature in blank in the following form: "Pay to the order of _____ without recourse", with all intervening endorsements that show a complete chain of endorsement from the originator to the person endorsing the Mortgage note, or, if the original Mortgage Note has been lost or destroyed or not replaced, an original lost note affidavit, stating that the original Mortgage Note was lost or destroyed, together with a copy of the related Mortgage Note,

(2) the original recorded Mortgage,

(3) a duly executed assignment of the Mortgage to "Asset-Backed Certificates, Series 2005-9, CWABS, Inc., by the Bank of New York, a New York Banking Corporation, as trustee under the Pooling and Servicing Agreement dated as of September 1, 2005, without recourse," in recordable form, as described in the Pooling and Servicing Agreement,

(4) the original recorded assignment or assignments of the Mortgage together with all interim recorded assignments of such Mortgage,

(5) the original or copies of each assumption, modification, written assurance or substitution agreement, if any, and

(6) the original or duplicate original lender's title policy and all riders thereto, or in the event such original title policy has not been received from the insurer, such original or duplicate original lender's title policy and all riders thereto will be delivered within one year of the Closing date.   Doc. #94, Ex. 1, p. S-22.

**{¶ 18}**     Immediately following these listed items, the Supplement stated that:

Notwithstanding the foregoing, *in lieu of providing the documents set forth in clauses (3) and (4) above,* the Depositor may at its discretion provide evidence that the related mortgage is held through the MERS (R) System.   In addition, the Mortgages for some or all of the Mortgage Loans in the Trust Fund that are not already held through the MERS (R) System may, at the discretion of the Master Servicer, in the future be held through the MERS (R) System.   For any Mortgage held through the MERS (R) System, the Mortgage is recorded in the name of Mortgage Electronic Registration System, Inc., or MERS (R), as nominee for the owner of the Mortgage Loan, and subsequent assignments of the Mortgage were, or in the future may be, at the discretion of the Master Servicer, registered electronically through the MERS (R) System.   For each of these Mortgage Loans, MERS (R) serves as mortgagee on record on the Mortgage solely as nominee in an administrative capacity on behalf of the Trustee, and does not have any interest in the Mortgage Loan.   (Emphasis supplied.)   *Id.* at p. S-22.

**{¶ 19}**     In addition, the Supplement provided that:

Assignments of the Mortgage Loans to the Trustee (or its nominee) will be recorded in the appropriate public office for real property records, except in states (such as California) as to which an opinion of counsel is delivered to the effect that such recording is not required to protect the Trustee's interests in the Mortgage Loan against the claim of any subsequent transferee or any successor to or creditor of the Depositor or the applicable Seller.  As to any Mortgage Loan, the recording requirement exception described in the preceding sentence is applicable only so long as the related Trustee's Mortgage File is maintained in the possession of the Trustee in one of the states to which such exception applies.  In the event any such assignment is delivered to the Trustee in blank and the related Trustee's Mortgage File is released by the Trustee pursuant to applicable provisions of the Pooling and Servicing Agreement, the Trustee will complete such assignment as provided in subparagraph (3) above prior to any such release. In the event such recording is required to protect the interest of the Trustee in the Mortgage Loans, the Master Servicer is required to cause each previously unrecorded assignment to be submitted for recording.  Doc. #94, Ex. 1, p. S-22.

**{¶ 20}**     According to the Supplement, the Depositor, CWABS, Inc., was required to deliver all the Trustee's Mortgage Files to the Trustee by no later than thirty days after the closing date.  *Id.*  The Supplement allowed the Trustee to review the mortgage loans, and contained a provision requiring the Seller to repurchase loans found to have defective documents

within 90 days after receipt of notice from the Trustee. As an alternative, the Seller could remove any defective loans from the Trust and substitute other mortgage loans of like kind, with the limitation that substitution would only be permitted within two years of the closing date. *Id.* at p. S-22.

{¶ 21} The remainder of the Supplement deals with unrelated matters, such as administration of the Trust, distributions from the Trust, and so on.

{¶ 22} Clancy argues that Mellon, as Trustee, did not have an interest in the Clancy mortgage because the assignment of the mortgage to the Trustee was required to be completed by September 28, 2005, which was the closing date of the trust. Clancy further argues that the assignment was required to be recorded. Therefore, because the mortgage was not assigned from MERS to Mellon until May 12, 2011, Clancy argues that the assignment of the mortgage was improper and was void under New York law, which provides that "[i]f the trust is expressed in the instrument creating the estate of the trustee, every sale, conveyance or other act of the trustee in contravention of the trust, except as authorized by this article and by any other provision of law, is void." N.Y. Estates Powers and Trusts Law 7-2.4.

{¶ 23} As an initial matter, we note that the Prospectus and Supplement are not instruments creating the Trust; they are documents that were compiled in order to inform potential investors about the nature of the assets to be contained in the Trust and the risk factors involved in investing in this security. "[T]he word 'prospectus' is a term of art referring to a document that describes a public offering of securities by an issuer or controlling shareholder." *Gustafson v. Alloyd Co., Inc.*, 513 U.S. 561, 584, 115 S.Ct. 1061, 131 L.Ed.2d 1 (1995). In *Gustafson*, the Supreme Court of the United States also noted that a "contract of sale, and its

recitations, were not held out to the public and were not a prospectus as the term is used in the 1933 Act." *Id.* *See, also*, *San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Cos., Inc.*, 75 F.3d 801 (2d Cir.1996), noting that "the statute requiring a prospectus ' "was designed to assure compliance with the disclosure provisions of the [Securities] Act [of 1993] by imposing a stringent standard of liability on the parties who play a direct role in a registered offering." ' " *Id.* at 810, fn.11,  quoting *Kronfeld v. Trans World Airlines, Inc.*, 832 F.2d 726, 734-735 (2d Cir.1987).  (Other citation omitted.)  As an example, "Section 11 of the 1933 Act allows purchasers of a registered security to sue certain enumerated parties in a registered offering when false or misleading information is included in a registration statement." *Herman & MacLean v. Huddleston*, 459 U.S. 375, 381, 103 S.Ct. 683, 74 L.Ed.2d 548 (1983).

**{¶ 24}**    Clancy failed to submit the Trust agreement to the trial court, and, therefore, we do not know what the precise terms of the Trust were.  As a result, Clancy failed to meet her burden of proof.  Once a foreclosure ruling is issued, and the defendant is forced to challenge standing in a post-judgment motion to vacate, the burden of proof switches to the defendant as the moving party.  *Koch*, 11th Dist. Geauga No. 2012-G-3084, 2013-Ohio-4423, ¶ 32.  "Given this, the defendant in a foreclosure case is not entitled to prevail on a motion to vacate a default judgment when he failed to support his motion with evidence that the plaintiff lacked standing to bring the action."  *Id.*, citing *U.S. Bank, N.A. v. Kapitula*, 12th Dist. Clermont No. CA2012-08-058, 2013-Ohio-2638, ¶ 6.

B.   Lack of Evidence that the Mortgage Was Improperly Conveyed.

**{¶ 25}**    Nonetheless, assuming for the sake of argument that the Trust terms were as

outlined in the Supplement, there is no indication that the mortgage was improperly conveyed to Mellon. In this regard, we note that the Supplement requires the Depositor to convey all of its assets to the Trust and to deliver various documents in what was called the "Trustee's Mortgage File." These acts are separate items in the discussion that is contained in the Supplement. Accordingly, there is no way to assume, nor would we assume, given the lack of documentation, that the Depositor could not sign a document generally transferring all of its assets to the Trust, followed by delivery of the Trustee's Mortgage File, which would contain individual assignments of the particular loans.

{¶ 26}  More importantly, the Supplement, itself, makes an exception to the assignment requirement for mortgages held through the MERS System. For those mortgages, the Depositor may provide evidence that the mortgage is being held through MERS, in lieu of providing the Trust with an executed assignment of the mortgage to the Trust. The Supplement also contemplates that unrecorded assignments of mortgages may be recorded later, when needed.

{¶ 27}  In the case before us, the mortgage was being held through MERS, and the Depositor could have provided evidence of this fact to the Trustee, rather than assigning the mortgage to the Trustee prior to the closing date. Consequently, the "closing date" would not be dispositive. Again, however, Clancy failed to submit evidence about this issue. Instead, the evidence before the trial court indicated that the mortgage was assigned to Mellon and was recorded with Montgomery County, Ohio, on May 17, 2011, prior to the time that Mellon filed the foreclosure complaint.

C.  Mellon had Standing to File the Foreclosure Action.

**{¶ 28}** With regard to the assignment of the mortgage, a properly assigned mortgage is "sufficient to demonstrate * * * standing under *Schwartzwald*." *HSBC Bank USA v. Sherman*, 1st Dist. Hamilton No. C-120302, 2013-Ohio-4220, ¶ 15. In *Sherman*, the First District Court of Appeals distinguished its holding from that of other Ohio courts, who "would have concluded from the filing of the properly assigned mortgage alone that [the bank] had standing." *Id.* at ¶ 16. As was mentioned earlier, these courts concluded that "[b]ased on the decision in *Schwartzwald*, * * * '[A] party may establish that it is the real party in interest with standing to invoke the jurisdiction of the common pleas court when, "at the time it files its complaint of foreclosure, it either (1) has had a mortgage assigned *or* (2) is the holder of the note." ' " (Emphasis sic.) *Lewis*, 12th Dist. Butler Nos. CA2012-11-239, CA2013-05-068, 2014-Ohio-71, at ¶ 15, quoting *Burke*, 12th Dist. Butler No. CA2012-12-245, 2013-Ohio-2860, at ¶ 13.

**{¶ 29}** In this regard, the First District Court of Appeals stressed that:

We note that in *Schwartzwald*, the mortgagee was neither an assignee of the mortgage nor a holder of the note at the time it filed its complaint. It achieved both positions only after the complaint had been filed. See *Schwartzwald*, 134 Ohio St.3d 13, 2012-Ohio-5017, 979 N.E.2d 1214, at ¶ 7 and 10; see also *Byrd*, 178 Ohio App.3d 285, 2008-Ohio-4603, 897 N.E.2d 722, at ¶ 2 (also reviewing a scenario where the mortgagee had brought suit but had filed neither an assigned note nor mortgage with its complaint). The "or" statement must be read in the context of the entire opinion. The question of whether standing can be achieved by the filing of either document with the complaint was not presented by the facts of the case and was not necessary to the resolution of

the issue presented.

For the determination of this case, we prefer to rely upon the rule of *Schwartzwald* that the fundamental requirement of standing is that the party bringing the action is actually the party who has suffered the injury, and that this situation must be established at the time of the commencement of the suit. *See Schwartzwald*, 134 Ohio St.3d 13, 2012-Ohio-5017, 979 N.E.2d 1214, at ¶ 24. The result is the same in this case. *Sherman* at ¶ 17-18.

{¶ 30} Accordingly, the First District Court of Appeals focused on the party who had suffered the injury. The court noted that although the note had not been endorsed to the plaintiff, and did not contain a blank endorsement, the note and mortgage both referred to each other, "demonstrating an intent to keep the note and mortgage together rather than transferring the mortgage alone, and establishing [the plaintiff's] interest in the note and its entitlement to enforce that instrument." (Citation omitted.) *Id.* at ¶ 15.

{¶ 31} Similarly, the mortgage and note in the case before us refer to each other, and show an intent to keep the note and mortgage together. In addition, the assignment of the mortgage specifically transfers all beneficial interest under the mortgage, "together with the note(s) and obligations therein described * * * " to Mellon. Complaint, Doc. #1, Ex. C, p. 1. We have previously held that under such circumstances, "the cross-referencing between the instruments is sufficient to establish a rebuttable presumption of intent to convey both the mortgage and note." *Fed. Home Loan Mtge. Corp. v. Trissell*, 2d Dist. Montgomery No. 25935, 2014-Ohio-1537, ¶ 15. As was noted, Clancy offered nothing to rebut the presumption.

{¶ 32} Thus, whether an interest in the note or mortgage, or both, is required, Mellon is

the party that suffered an injury, and Mellon established its interest at the time it filed suit against the Clancys. Mellon, therefore, had standing to pursue the action.

### D. Clancy Lacked Standing to Challenge the Validity of the Note and Mortgage.

**{¶ 33}** As an additional matter, even if the mortgage had been conveyed in violation of the trust, courts in Ohio have held that "because a debtor is not a party to the assignment of a note and mortgage, the debtor lacks standing to challenge their validity." *Deutsche Bank Natl. Trust Co. v. Whiteman*, 10th Dist. Franklin No. 12AP-536, 2013-Ohio-1636, ¶ 16, citing *LSF6 Mercury REO Invests. Trust Series 2008-1 c/o Vericrest Fin., Inc. v. Locke*, 10th Dist. Franklin No. 11AP-757, 2012-Ohio-4499, ¶ 28-29. *See, also*, *Bank of New York Mellon Trust Co. v. Unger*, 8th Dist. Cuyahoga No. 97315, 2012-Ohio-1950, ¶ 35; and *Sherman,* 1st Dist. Hamilton No. C-120302, 2013-Ohio-4220, at ¶ 21.[2]

**{¶ 34}** The reasoning of these cases is that the "mortgage assignments did not alter the [debtors'] obligations under the note or mortgage. [The plaintiff] filed the foreclosure complaint based on the [debtors'] default under the note and mortgage, not because of the mortgage assignments. The [debtors'] default exposed them to foreclosure regardless of the party who

---

[2] The Tenth District Court of Appeals recently limited its holdings in *Whiteman* and other cases, "to the extent that, in cases where R.C. Chapter 1303 applies, a debtor may challenge the assignment of a note (by negotiation or transfer) if such challenge fits the criteria of a denial, defense or claim in recoupment as outlined in R.C. 1303.36 or 1303.35." (Footnotes omitted.) *Bank of Am., N.A. v. Pasqualone*, 10th Dist. Franklin No. 13AP-87, 2013-Ohio-5795, ¶ 35. This limitation is irrelevant for purposes of the case before us, because Clancy did not present any such defenses or claims. The defenses in these statutes relate primarily to matters pertaining to the original promissory note, such as legal incapacity to sign, duress, and so forth. We also note that the Eighth and First District Courts of Appeal have not similarly limited their holdings. The First District has not commented further, and the Eighth District has specifically said that it continues to follow the view expressed in *Unger. See, e.g., HSBC Bank USA, Natl. Assn. v. Surrarrer*, 8th Dist. Cuyahoga No. 100039, 2013-Ohio-5594, ¶ 11.

actually proceeds with foreclosure. The [debtors], therefore, failed to show they suffered or will suffer any injury, the injury is traceable to the mortgage, and it is likely a favorable decision will remedy the injury." *Unger* at ¶ 35.

{¶ 35} Accordingly, Clancy lacked standing to challenge the validity of the mortgage assignment. As was noted, Clancy also failed to meet her burden of providing evidence about Mellon's alleged lack of standing. And finally, because Mellon had standing to file the foreclosure action, the trial court had jurisdiction over the case.

{¶ 36} Based on the preceding discussion, Clancy's sole assignment of error is overruled.

### III. Conclusion

{¶ 37} Clancy's sole assignment of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . .

HALL, J., concurs.

DONOVAN, J., concurs in judgment only.

Copies mailed to:

James A. Tully
Jason A. Whitacre
Ashley Mueller
Bruce M. Broyles
Douglas Trout
Howard Clancy
Hon. Michael W. Krumholtz