[Cite as *Wells Fargo Bank, N.A. v. Mears*, 2019-Ohio-242.]

# IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## MONTGOMERY COUNTY

| | | |
|---|---|---|
| WELLS FARGO BANK, N.A. | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 27995 |
| | : | |
| v. | : | Trial Court Case No. 2017-CV-1431 |
| | : | |
| JOYCE D. MEARS aka JOYCE | : | (Civil Appeal from |
| MEARS, et al. | : |  Common Pleas Court) |
| | : | |
| Defendant-Appellant | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 25th day of January, 2019.

. . . . . . . . . .

JAMES W. SANDY, Atty. Reg. No. 0084246, 3401 Tuttle Road, Suite 200, Cleveland, Ohio 44122
        Attorney for Plaintiff-Appellee

GABRIELLE R. NEAL, Atty. Reg. No. 0092770, 7925 Paragon Road, Dayton, Ohio 45459
        Attorney for Defendant-Appellant

. . . . . . . . . . . .

FROELICH, J.

{¶ 1} Joyce D. Mears appeals from a judgment and decree of foreclosure in favor of Wells Fargo Bank, N.A. on its reverse mortgage foreclosure claim. Mears claims that the trial court erred in granting summary judgment to Wells Fargo because Wells Fargo failed to establish that it complied with all conditions precedent to filing its action. For the following reasons, the trial court's judgment will be reversed and the case remanded for further proceedings.

## I. Factual and Procedural History

{¶ 2} On September 24, 2009, Mears executed a Home Equity Conversion Loan Agreement (reverse mortgage agreement), which allowed Mears to borrow against the equity in her home. Along with the agreement, Mears executed an adjustable rate note for the amounts advanced by Wells Fargo; no specific amount was specified, as the amount of the loan depended on the draws made by Mears on the account. The loan was secured by a "reverse mortgage" on her residential property in Miamisburg, Ohio.

{¶ 3} Under the terms of the note and mortgage, Wells Fargo was entitled to seek immediate payment in full, upon approval by an authorized representative of the secretary of Housing and Urban Development (HUD), if Mears defaulted on her obligations. The mortgage required Wells Fargo to notify HUD and Mears when the loan became due and payable. It also provided that Wells Fargo "shall not have the right to commence foreclosure until Borrower has had thirty (30) days after notice to * * * [c]orrect the matter which resulted in the Security Instrument coming due and payable[.]"

{¶ 4} Paragraph two of the Uniform Covenants in the mortgage required Mears to pay "all property charges consisting of taxes, ground rents, flood and hazard insurance

premiums, and special assessments in a timely manner, and shall provide evidence of payment to Lender, unless Lender pays property charges by withholding funds from monthly payments due to the Borrower or by charging such payments to a line of credit as provided for in the Loan Agreement." Paragraph 2.10.1 of the loan agreement also addressed payment of property charges, stating: "Borrower has elected to require Lender to use Loan Advances to pay property charges consisting of taxes, hazard insurance premiums, ground rents and special assessments if indicated on the attached payment plan (Exhibit1). Borrower may change this election by notifying Lender and at that time Lender shall pay to Borrower any amounts withheld from the Loan Advances to pay property charges." Mears's loan agreement did not include an Exhibit 1 or any other document showing that Mears had elected to require Wells Fargo to use loan advances to pay property charges.

{¶ 5} On January 23, 2017, Wells Fargo sent a notice of default letter, dated January 20, 2017, to Mears by first-class mail. Wells Fargo informed Mears that it had advanced funds in the amount of $4,873.18 for past due property charges (taxes) and that the loan was now due and payable. The letter stated that Mears could bring her reverse mortgage account current by paying the past due property charges of $4,873.18 by February 19, 2017.

{¶ 6} On March 21, 2017, Wells Fargo filed a complaint in foreclosure, alleging that it was entitled to enforce the note and mortgage, that grounds for acceleration had occurred, that $220,681.13 was due and owing as of March 14, 2017, and that additional amounts would accrue while the action was pending. Wells Fargo indicated that it was not seeking a personal judgment on the note. Wells Fargo alleged that the mortgage

constituted a valid first lien on the property, that it had complied with all conditions precedent, and that it was entitled to have the mortgage foreclosed.

**{¶ 7}** Mears filed an answer. She denied that Wells Fargo had complied with all conditions precedent and that Wells Fargo was entitled to foreclose on the mortgage. Mears alleged, as affirmative defenses, that Wells Fargo failed to provide notice of default under the note and notice to cure under the mortgage, which she described as conditions precedent. She further alleged that Wells Fargo failed to comply with applicable FHA servicing rules and guidelines, including by failing to arrange for a face-to-face meeting with Mears and by failing to obtain approval of the secretary of HUD for immediate repayment in full.

**{¶ 8}** On August 17, 2017, Wells Fargo moved for summary judgment on its foreclosure claim. Wells Fargo argued that it was the real party in interest, that Mears defaulted by failing to pay taxes, that Wells Fargo sent Mears a notice of default, and that the default was not cured. Further, Wells Fargo argued that Mears had no evidence to support her affirmative defenses and that HUD regulations did not require a face-to-face meeting. Wells Fargo supported its motion with an affidavit by Sherri W. McManus, Vice President Loan Documentation for Wells Fargo, and supporting exhibits

**{¶ 9}** Mears opposed Wells Fargo's motion. She claimed that Wells Fargo failed to obtain approval from HUD prior to seeking foreclosure and that it failed to provide her 30 days to cure the default. Mears further claimed that there was a genuine issue of material fact regarding her obligation to pay taxes and, therefore, whether she had breached the loan agreement. Mears asked the trial court to deny Wells Fargo's summary judgment motion and to grant her summary judgment on its claim. Mears

relied on Wells Fargo's evidentiary materials and did not provide any additional evidence.

{¶ 10} In its reply memorandum, Wells Fargo claimed that it was not required to establish that it obtained HUD approval, stating that no regulation or Ohio case law required HUD approval prior to filing the foreclosure action. It further argued that it sent the required notice of default and established that Mears breached the agreement. Mears responded that both the loan documents and HUD regulations required HUD's approval prior to acceleration of the debt. She further reiterated that the notice of default did not provide 30 days to cure the default.

{¶ 11} On March 16, 2018, the trial court filed a decision holding in abeyance its ruling on the motions for summary judgment, finding that evidence before it regarding whether Wells Fargo obtained approval from HUD was insufficient for the court to grant either motion for summary judgment. The court further found that "additional evidence *may* allow the Court to grant one or the other of the motions." (Emphasis sic.) The court ordered the parties to submit supplemental memoranda and evidence solely on the issue of whether Wells Fargo complied with the HUD approval requirements and, if it did not, whether such non-compliance constituted failure of a condition precedent or an equitable affirmative defense to foreclosure.

{¶ 12} Wells Fargo provided a supplemental affidavit and a supporting document, stating that it had received approval from HUD to proceed with the foreclosure action. Mears filed a supplemental memorandum, arguing that Wells Fargo's supplemental evidence did not establish HUD approval. Mears also argued that the failure to obtain HUD approval was a condition precedent.

{¶ 13} On April 27, 2018, the trial court granted Wells Fargo's motion for summary

judgment and denied Mears's cross-motion for summary judgment. The trial court concluded that (1) Wells Fargo was the holder of the note and mortgage and was entitled to enforce them, (2) Mears defaulted on her obligations by failing to pay taxes on the property, and (3) Wells Fargo complied with the conditions precedent to filing the foreclosure action, namely the requirements to notify and seek approval from HUD and to provide Mears 30 days to cure the default. Finally, the trial court found that there were no genuine issues of material fact as to the amount of principal and interest due to Wells Fargo. The same day, the trial court entered a judgment and decree of foreclosure.

{¶ 14} Mears appeals from the trial court's judgment and decree of foreclosure, claiming that the trial court erred in granting summary judgment to Wells Fargo. She asserts that Wells Fargo failed to establish that it had HUD's approval prior to filing its foreclosure action and that it failed to provide 30 days to Mears to cure the default.

## II. Summary Judgment Standard

{¶ 15} Pursuant to Civ.R. 56(C), summary judgment is proper when (1) there is no genuine issue as to any material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds, after construing the evidence most strongly in favor of the nonmoving party, can only conclude adversely to that party. *Zivich v. Mentor Soccer Club, Inc.*, 82 Ohio St.3d 367, 369-370, 696 N.E.2d 201 (1998). The moving party carries the initial burden of affirmatively demonstrating that no genuine issue of material fact remains to be litigated. *Mitseff v. Wheeler*, 38 Ohio St.3d 112, 115, 526 N.E.2d 798 (1988). To this end, the movant must be able to point to evidentiary materials of the type listed in Civ.R. 56(C) that a court is to consider in rendering summary judgment. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293, 662 N.E.2d 264 (1996).

{¶ 16} Once the moving party satisfies its burden, the nonmoving party may not rest upon the mere allegations or denials of the party's pleadings. *Dresher* at 293; Civ.R. 56(E). Rather, the burden then shifts to the nonmoving party to respond, with affidavits or as otherwise permitted by Civ.R. 56, setting forth specific facts that show that there is a genuine issue of material fact for trial. *Dresher* at 293. Throughout, the evidence must be construed in favor of the nonmoving party. *Id.*

{¶ 17} We review the trial court's ruling on a motion for summary judgment de novo. *Schroeder v. Henness*, 2d Dist. Miami No. 2012 CA 18, 2013-Ohio-2767, ¶ 42. De novo review means that this court uses the same standard that the trial court should have used, and we examine the evidence, without deference to the trial court, to determine whether, as a matter of law, no genuine issues exist for trial. *Ward v. Bond*, 2d Dist. Champaign No. 2015-CA-2, 2015-Ohio-4297, ¶ 8.

{¶ 18} To prevail on a motion for summary judgment in a foreclosure action, the plaintiff must prove: (1) it is the holder of the note and the mortgage, or is a party entitled to enforce them; (2) if the plaintiff is not the original mortgagee, the chain of assignments and transfers; (3) the mortgagor is in default; (4) all conditions precedent have been met; and (5) the amount of principal and interest due. *U.S. Home Ownership, LLC v. Young*, 2018-Ohio-1059, 109 N.E.3d 681, ¶ 7 (2d Dist).

### III. Evidence of HUD Approval

{¶ 19} Part 206 of the Code of Federal Regulations, Title 24, concerns the Home Equity Conversion Mortgage Insurance program, or reverse mortgages. 24 C.F.R. 206.27, which sets forth the required provisions of a reverse mortgage, includes provisions about when the mortgage comes due and payable. Of relevance, 24 C.F.R.

206.27(c)(2) states:

> (2) The mortgage shall state that the outstanding loan balance shall be due and payable in full, *upon approval of the [HUD] Commissioner*, if any of the following occur:
>
> (i) The property ceases to be the principal residence of a borrower for reasons other than death and the property is not the principal residence of at least one other borrower;
>
> (ii) For a period of longer than 12 consecutive months, a borrower fails to occupy the property because of physical or mental illness and the property is not the principal residence of at least one other borrower;
>
> *(iii) The borrower does not provide for the payment of property charges in accordance with § 206.205; or*
>
> (iv) An obligation of the borrower under the mortgage is not performed.

(Emphasis added.) Mears's note and mortgage contained provisions consistent with this regulation. Further, 24 C.F.R. 206.125(a)(1) requires that the mortgagee, i.e., Wells Fargo, "shall notify the Commissioner within 30 days when one of the conditions stated in the mortgage, as required by § 206.27(C)(2), has occurred."

**{¶ 20}** In response to the trial court's request for supplemental memoranda regarding Wells Fargo's receipt of approval from HUD to pursue foreclosure, Wells Fargo submitted a supplemental affidavit from McManus. McManus stated:

> 4. Joyce D. Mears defaulted under the terms of the Note, the Payment Plan, and the Mortgage securing the Note. Upon her default, Wells Fargo requested approval from the Department of Housing and Urban

Development in order to file a foreclosure. Wells Fargo received approval from HUD on November 21, 2016.

McManus indicated that a "true and accurate" copy of the "HUD approval letter" was attached as Exhibit B.

{¶ 21} Exhibit B consisted of correspondence, dated November 21, 2016, from NOVAD Management Consulting to Wells Fargo. The top of the correspondence had an FHA Case Number, which had been redacted, and identified the borrower as Mears. Below that information was a series of options: "Request APPROVED", "Request DENIED", and "Request PENDING (see below)" for a menu of "backup documentation" that was still needed. The box beside "Request APPROVED" was selected. The bottom of the document had "Date of Default: 10/18/2016," and the document was "signed" with the typed name "Author Wigfall," a "Default Loan Specialist." Next to the signature line was the typewritten date of November 21, 2016.

{¶ 22} The trial court found that Wells Fargo's evidence was sufficient to demonstrate that Wells Fargo had received approval from HUD to demand payment in full and that no genuine issue of material fact existed. The court reasoned:

* * * As Mears points out, the Letter is on the letterhead of NOVAD Management Consulting and states "Request APPROVED"; it does not explicitly state that HUD has approved acceleration of the amount due under the Note and filing the foreclosure. However, the Letter also includes an FHA Case #, which has been redacted, and the borrower's name, which is Joyce D. Mears. Further, while not checked here, the Letter includes several checkboxes for failure to provide the following

documents, all of which relate to a mortgage. Finally, in her Supplemental Affidavit, McManus states that upon Mears' default, "Wells Fargo requested approval from [HUD] in order to file a foreclosure. Wells Fargo received approval from HUD on November 21, 2016." Significantly, Mears has not pointed to any facts showing that Wells Fargo did not obtain such approval. (Footnote omitted.)

**{¶ 23}** Mears argues on appeal, as she did in the trial court, that there is nothing in the letter indicating what Wells Fargo had requested, nor was there any reference to HUD. Mears argues that neither Exhibit B nor McManus's affidavit indicates what relationship, if any, NOVAD had to Mears's loan or to HUD.[1] Mears thus asserts that Exhibit B is insufficient to establish that Wells Fargo received approval from HUD to demand payment in full. Mears further argues that, in inferring that NOVAD's letter was an authorization from HUD, the trial court improperly viewed the evidence in the light most favorable to Wells Fargo, not to her.

---

[1] In her reply brief, Mears argues that the delegation of governmental authority must be accomplished in accordance to law. She refers us to the HUD website: https://www.hud.gov/delegations-of-authority, and she cites to an announcement of a delegation of the Secretary of HUD's authority, reported in 80 Fed.Reg. 21756. Wells Fargo has moved to strike the Federal Register attachment.

In reviewing the trial court's judgment, we are limited to the record before the trial court. *E.g., Kahler v. Eytcheson*, 2d Dist. Montgomery No. 23523, 2012-Ohio-208, ¶ 23. Accordingly, we cannot consider the information from the HUD website, which was not presented to the trial court. We likewise will not consider the Federal Register attachment. The Federal Register contains four types of documents: presidential documents, rules, proposed rules, and notices; not all documents have legal effect and general applicability to the public. Mears's attachment indicates that it is from the "Notices" section of the Federal Register, and it appears to be akin to an exhibit, which we cannot consider for the first time on appeal, rather than a source of legal authority, which we could consider. Because the notice was not submitted to the trial court, it is not properly before us. Wells Fargo's motion to strike is granted.

**{¶ 24}** Viewing the evidence in the light most favorable to Mears, we agree with her that genuine issues of material fact exist as to whether Wells Fargo received authorization from HUD to require immediate repayment in full from Mears. McManus's affidavit states that, upon Mears's default, Wells Fargo requested approval from HUD in order to file a foreclosure action and received that approval on November 21, 2016. McManus provided no documentation of Wells Fargo's request for approval. She identified Exhibit B as documentation of HUD's approval of Wells Fargo's alleged request to seek immediate repayment in full. However, there is nothing in Exhibit B that identifies NOVAD as an authorized representative of HUD, either for purposes of approving a demand for immediate repayment in full or for any other purpose. McManus's affidavit also fails to identify NOVAD's association, if any, with HUD.

**{¶ 25}** Wells Fargo argues, citing *Wells Fargo Bank, N.A. v. Schindler*, No. 3728 EDA 2015, 2017 WL 1078672 (Pa.Super. Mar. 22, 2017), that at least one other court has affirmed a grant of summary judgment to Wells Fargo in a reverse mortgage foreclosure action based on similar evidence. In *Schindler*, the superior court addressed Wells Fargo's notice to the borrower and HUD approval, stating:

> Upon review of the record, Wells Fargo provided the requisite notice to Appellant by letter dated May 15, 2013, which specifically highlighted the above-mentioned courses of action. [Wells Fargo Motion for Summary Judgment, 10/2/2014,] at Exhibit A. Wells Fargo did not institute its foreclosure action until October 18, 2013, more than 30 days after providing notice on May 15, 2013. Moreover, Deval, LLC (Deval) was Wells Fargo's loan servicing contractor through HUD. *See id.* at Exhibit M. Deval gave

Wells Fargo approval for the reverse mortgage to become due and payable in a letter dated May 31, 2013. *See id.* at Exhibit H. There is no dispute that Appellant never corrected the damage that led him to end his residency in the mortgage property or paid the mortgage balance in full.

*Schindler* at * 5.

{¶ 26} *Schindler* does not describe the exhibits provided by Wells Fargo in support of its summary judgment motion. Nevertheless, the trial court was able to conclude, based on Exhibit M, that Deval was a loan servicing contractor through HUD; we have no evidence from which to make a similar conclusion regarding NOVAD. In addition, the NOVAD letter did not indicate that its approval was for Mears's loan to be immediately due and payable. Without additional information about Exhibit H in *Schindler*, we cannot evaluate whether the Pennsylvania court reached its conclusion based on a similarly sparse letter or, instead, a more detailed approval letter. We therefore find *Schindler* to be distinguishable and not persuasive.

{¶ 27} Furthermore, we disagree with Wells Fargo's suggestion that McManus's affidavit alone satisfies any burden it has to establish HUD's approval. Again, McManus's affidavit states that, after Mears's default, Wells Fargo "requested approval from the Department of Housing and Urban Development in order to file a foreclosure. Wells Fargo received approval from HUD on November 21, 2016." Even assuming that those broad statements would be sufficient to meet Wells Fargo's summary judgment burden, McManus's statements cannot be viewed in isolation, given that she cited to the NOVAD correspondence to support her averment that HUD had approved Wells Fargo's request. And, as stated above, we must construe the evidence in the light most

favorable to Mears, not to Wells Fargo. Stated simply, the NOVAD letter raises questions about whether Wells Fargo received approval from a representative of HUD and what approval was received.

{¶ 28} Even if we could infer that NOVAD was an approved representative of HUD, it is unclear whether Wells Fargo received approval to pursue foreclosure based on the property charge advancement of $4,873.18. McManus did not identify the date of Mears's default in either affidavit. The January 2017 notice of default, attached as Exhibit E to McManus's first affidavit, informed Mears that Wells Fargo had advanced $4,873.18 for property charges, which resulted in a default. Mears's loan balance history, attached as Exhibit D to McManus's first affidavit, shows that Wells Fargo advanced $4,873.18 on October 24, 2016. The NOVAD approval letter identified the date of default as October 18, 2016; the loan balance history shows that Wells Fargo advanced $1,010.80 on October 18, 2016. Stated simply, the amount advanced on October 18, 2016 ($1,010.80), the apparent date of default, does not correspond to the amount identified as the default amount in the January 2017 notice of default. There is nothing in the notice of default to suggest that Mears was in default due to the $1,010.18 advancement or that HUD, through NOVAD or in any other fashion, had authorized foreclosure based on the $1,010.80 advancement.

{¶ 29} Finally, Mears asserted at oral argument that we should not apply our statements in *Wells Fargo Bank, N.A. v. Herman*, 2d Dist. Montgomery No. 27854, 2018-Ohio-3700, regarding the effect of HUD's disclaimer of interest in real property contained in its answer to a foreclosure complaint. In *Herman*, an appeal from a default judgment against a homeowner in a reverse mortgage foreclosure action, the homeowner also

raised that the mortgagee had failed to obtain approval from HUD to accelerate her loan. We held that the homeowner's failure to file an answer constituted an admission that Wells Fargo had complied with all conditions precedent to filing its action. We further noted, citing *Nationstar Mortgage, LLC v. Parish*, 7th Dist. Mahoning No. 14 MA 0176, 2016-Ohio-6975, that HUD's disclaimer of an interest in the property in its answer made it "difficult to see how [Wells Fargo's] failure to notify and seek permission from the Secretary [of HUD] affected [the homeowner's] substantive rights." *Herman* at ¶ 21.

{¶ 30} We decline to apply our statements regarding the effect of the disclaimer in *Herman* for several reasons. First, given that the homeowner in *Herman* had failed to file an answer, these statements were unnecessary to the outcome of the case and were, consequently, dicta. Second, Wells Fargo has not argued in this case that HUD's subsequent disclaimer obviated the requirement that it (Wells Fargo) seek approval prior to demanding payment in full. Finally, in stating that HUD does not have an interest in the Mears's property, the government's answer further states that "[t]he current balance of Defendant Joyce D. Mears indebtedness to the United States is zero ($0.00)." Thus, the disclaimer appears to relate to HUD's financial interest in the property for purposes of foreclosure and sale, not to its role as a regulatory agency regarding reverse mortgages. The pre-acceleration approval requirement appears to be separate from whether HUD has any financial interest in the property, which could occur, for example, if the lender went defunct.

{¶ 31} Accordingly, construing the evidence in Mears's favor, as we are required to do in reviewing Wells Fargo's motion for summary judgment, there is a genuine issue of material fact as to whether Wells Fargo sought and obtained approval from HUD to

seek immediate repayment in full based on the advancement of $4,873.18 on October 24, 2016 for property charges. With the evidence before us, the trial court thus erred in finding that no genuine issues of material fact exist as to whether Wells Fargo sought and obtained HUD's approval prior to demanding immediate repayment of the loan from Mears. Accordingly, the trial court erred in granting summary judgment to Wells Fargo on its foreclosure claim.

### III. Notice of Default

{¶ 32} The notification to be provided by the mortgagee to the borrower upon default is set forth in 24 C.F.R. 206.125(a)(2). It states:

After notifying and receiving approval of the Commissioner when needed, the mortgagee shall notify the borrower * * * within 30 days of the later of notifying the Commissioner or receiving approval, if needed, that the mortgage is due and payable. The mortgagee shall give the applicable party 30 days from the date of notice to engage in the following actions:

* * *

(iv) Correct the condition which resulted in the mortgage coming due and payable for reasons other than the death of the last surviving borrower[.]

{¶ 33} Mears's mortgage similarly required Wells Fargo to notify HUD and Mears when the loan became due and payable. It further stated that Wells Fargo "shall not have the right to commence foreclosure until Borrower has had thirty (30) days after notice to * * * [c]orrect the matter which resulted in the Security Instrument coming due and payable[.]" (Uniform Covenants, ¶ 9(d).)

{¶ 34} We have held that "[w]here prior notice of default and/or acceleration is

required by a provision in a note or mortgage instrument, the provision of notice is a condition precedent." *Wells Fargo Bank, N.A. v. Scott*, 2d Dist. Montgomery No. 26552, 2015-Ohio-3269, ¶ 19, quoting *First Fin. Bank v. Doellman*, 12th Dist. Butler No. CA2006-02-09, 2007-Ohio-222, ¶ 20; *see also Parish*, 7th Dist. Mahoning No. 14 MA 0176, 2016-Ohio-6975, ¶ 20.

{¶ 35} McManus stated in her affidavit that a notice of default was sent by first-class mail to Mears. The notice of default, dated January 20, 2017, was attached to McManus's affidavit, as was documentation regarding the mailing of the notice. The documentation regarding the mailing of the notice indicated that the letter was mailed by first-class mail on January 23, 2017.

{¶ 36} The notice of default informed Mears that Wells Fargo had "advanced funds to pay past due property charges on [her] behalf" and that, because Mears had not repaid the funds, her reverse mortgage loan was due and payable. The letter indicated that, if Mears wished to remain in her home, she had several options. One option was to bring her reverse mortgage account current by repaying the past due property charges in the amount of $4,873.18 by February 19, 2017. February 19, 2017 was thirty days after January 20, 2017, the date of the notice.

{¶ 37} Section 2 of the notice of default was titled, "What happens if you do not respond within 30 days." This section emphasized that Mears had 30 days to respond to the notice. It stated that if Mears did not select a repayment option within 30 days of the notice, HUD guidelines required that Wells Fargo begin the foreclosure process within three months, but not less than one month. This section further indicated that Mears could request an extension from HUD to repay the entire mortgage; the deadline to

request an extension was also February 19, 2017.

{¶ 38} Mears argues that she did not receive 30 days to cure her default, because the notice was not sent until January 23, 2017, and she was given only until February 19, 2017 (less than 30 days) to respond. The trial court rejected Mears's argument, stating:

There is no dispute that Wells Fargo filed the Complaint on March 21, 2017, fifty-seven days after the Notice was sent to Mears, via first-class mail, on January 23, 2017. While the Notice informed Mears that she had until February 19, 2017 (less than thirty days) to cure the default, the Notice was dated January 20, 2017 and stated in several places, in bold-face type, that Mears had thirty days to respond. Despite this, Mears failed to respond to the Note or cure the default for fifty-seven days. Significantly, Mears has not pointed to any facts showing that she was misled or confused by the Notice.

{¶ 39} We agree with the trial court that Wells Fargo complied with the requirements of the federal regulations and the loan documents. The notice of default was dated January 20, 2017, and informed Mears that she had 30 days – until February 19, 2017 -- to take action to cure her default. The notice was not mailed until January 23, 2017, but Wells Fargo did not take any action against Mears within 30 days of January 23, 2017. Wells Fargo filed its foreclosure action on March 21, 2017, which was more than 30 days after the mailing of the notice. Mears does not claim that she did not receive the notice or that she attempted to cure the default within 30 days of its mailing but was not permitted to do so. The trial court did not err in its determination of this issue.

**IV. Conclusion**

{¶ 40} In summary, the trial court did not err in its ruling regarding the notice of default. However, genuine issues of material fact exist as to whether Wells Fargo sought and obtained HUD's approval, based on the non-payment of $4,873.18 in property charges as claimed in the summary judgment motion, prior to demanding immediate repayment of the loan from Mears. Accordingly, the trial court erred in granting summary judgment to Wells Fargo on its foreclosure claim.

{¶ 41} The trial court's judgment will be reversed, and the matter will be remanded for further proceedings.

. . . . . . . . . . . . .

DONOVAN, J., concurs.

HALL, J., dissenting:

{¶ 42} I agree there is no genuine issue of material fact that Wells Fargo complied with its obligation to provide 30 days' notice of default before initiating foreclosure. I disagree with the conclusion that a genuine issue of material fact exists as to whether Wells Fargo had obtained HUD approval to foreclose on this undeniably delinquent reverse mortgage. Wells Fargo provided an uncontested affidavit definitively indicating it obtained HUD approval to foreclose, and criticism of a document attached to that affidavit is pure speculation and conjecture that does not create a genuine issue of material fact. The trial court's grant of summary judgment should be affirmed.

{¶ 43} "Upon [Joyce D. Mears's] default, Wells Fargo requested approval from the Department of Housing and Urban Development in order to file a foreclosure. Wells Fargo received approval from HUD on November 21, 2016." (McManus affidavit filed March 30,

2018). That sworn averment, by itself, is sufficient to impose upon the defendant the reciprocal burden to present some evidence to the contrary. *Dresher*, 75 Ohio St.3d 280, 293, 662 N.E.2d 264. The majority's criticism that the lender did not provide "documentation of Wells Fargo's request for approval," above at ¶ 24, turns the summary judgment burden upside down. There was no requirement in this instance that documentation be submitted.

{¶ 44} The majority justifies its denial of summary judgment by speculating that the document attached to the affidavit identified as "the HUD approval letter (Exhibit B)" "raises questions" about the approval. First, I repeat, a document is not necessary when the facts in an affidavit are not contested. But secondly, any questions are in the eye of the beholder, not evidence or reasonable inference upon which to create a genuine issue. The attachment is definitively a communication to Wells Fargo about an FHA case in the name of Joyce D. Mears indicating "request approved." The letter is on letterhead of NOVAD Management Consulting, likely a vendor for HUD or a servicer of Wells Fargo. Regardless of how, or from whom, Wells Fargo was notified of approval from HUD, nothing suggests that the letter is anything other than a communication indicating HUD had approved proceeding with the foreclosure. Most concerning, the criticism of the document is without presentation of any affidavit or evidence from the nonmoving party.

{¶ 45} Finally, the majority ignores our own previous observation that when HUD is in fact a party to the foreclosure, and HUD has filed a disclaimer in the action (as in this case), the borrower "could not have mounted a successful defense based on the alleged lack of HUD approval." *Herman*, 2d Dist. Montgomery No. 27854, 2018-Ohio-3700, ¶ 18. The majority now refers to the *Herman* conclusion as "dicta" not to be followed. But that

conclusion was based on the case we then cited, *Parish*, 7th Dist. Mahoning No. 14 MA 0176, 2016-Ohio-6975, which held "failure to notify and seek permission from the Secretary [HUD] had no affect on any right Parish may have had and so, was unnecessary in light of HUD's disclaimer." *Id.* at ¶ 23. Consequently, regardless of whether our now-rejected observation in *Herman* is followed, *Parish* is persuasive authority that HUD approval to foreclose the Mears loan was unnecessary.

**{¶ 46}** I agree with the trial court and would affirm its decision.


Copies sent to:

James W. Sandy
Gabrielle R. Neal
Michele Phipps
Hon. Steven K. Dankof