[Cite as *Trinity Fin. Servs. v. Unknown Heirs of King*, 2024-Ohio-2377.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| TRINITY FINANCIAL SERVICES, LLC | : | |
| | : | |
| Appellees | : | C.A. No. 30066 |
| | : | |
| v. | : | Trial Court Case No. 2023 CV 01389 |
| | : | |
| UNKNOWN HEIRS, FIDUCIARIES, | : | (Civil Appeal from Common Pleas |
| BENEFICIARIES, DEVISEES AND | : | Court) |
| DONEES OF BRENDA KING, et al. | : | |
| | : | |
| Appellant | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on June 21, 2024

. . . . . . . . . . .

WORRELL A. REID, Attorney for Appellant

ELLEN L. FORNASH, Attorney for Appellee

. . . . . . . . . . . .

EPLEY, P.J.

{¶ 1} Upscale Homes, LLC, appeals from a judgment and decree of foreclosure issued by the Montgomery County Court of Common Pleas in favor of Trinity Financial

Services, LLC.   For the following reasons, the trial court's judgment will be reversed, and the matter will be remanded for further proceedings.

## I. Background and Procedural History

{¶ 2} Tony and Brenda King, now both deceased, formerly owned the property located at 644 Smallwood Road in Dayton.   In September 2003, while they owned the property, Brenda borrowed $25,500 from Aegis Lending Corporation, with an interest rate of 12.05 percent.   Brenda was required to make monthly payments of $306.86, beginning on December 1, 2003, and she agreed to pay any remaining amounts owed, in full, on November 1, 2018.   The loan was secured by a mortgage executed by both Brenda and Tony and recorded with the Montgomery County Recorder on October 6, 2003.

{¶ 3} According to Trinity, in September 2017, the Kings sold the Smallwood property to Ryan Hillenberg.   Appellant's Brief, citing Deed No. 2017-00057716.   Four days later, Hillenberg sold the property to Antwon Lane.   See Counterclaim, ¶ 1; Deed No. 2017-00058482.   Upscale obtained the property from Lane, the sole member of Upscale, in 2018.   See Counterclaim, ¶ 1; Deed No. 2018-00028780.   According to Upscale, Tax Ease Ohio, LLC, had purchased tax certificates for delinquent real estate taxes on the property.   Upscale paid $12,275.37 to Tax Ease to redeem the tax certificates and remove the liens.

{¶ 4} On May 10, 2022, Trinity sent a notice of default to Tony King, informing him that the loan had been in default since April 2012, that the past-due amount, including late charges and other fees, totaled to $38,663.14, and that failure to pay the amount in full by June 9, 2022, could result in foreclosure on the mortgaged property.

{¶ 5} On March 20, 2023, Trinity filed a complaint for foreclosure, naming Tony King, Upscale, the Ohio Department of Taxation, and other unnamed individuals. The complaint alleged that the loan was in default in the amount of $16,736.72 with interest from March 7, 2012. It indicated that Brenda was by then deceased and that Tony had received a discharge in a Chapter 7 bankruptcy and was no longer personally liable for the debt. Trinity sought judgment on the note, foreclosure of the mortgage, and the sale of the property. Attached to the complaint were copies of the original note and mortgage, along with copies of the allonges attached to the note and assignments of the mortgage. Trinity also filed a preliminary judicial report showing liens on the property.

{¶ 6} Upscale answered the complaint, denying the allegations and raising 18 defenses. It also asserted counterclaims for unjust enrichment and subrogation. Upscale claimed that, due to its payment of the tax certificates, it should be subrogated to the position of the Montgomery County Treasurer and be reimbursed for its tax certificate payments ($12,275.37) prior to payment of Trinity's mortgage lien.

{¶ 7} The Ohio Department of Taxation also filed an answer, disclaiming any interest in the property. Trinity subsequently dismissed Tony King and his unknown spouse, stating that Tony was also deceased and was not the current owner of the property. The other unnamed defendants were served by publication and did not respond to the complaint; the trial court later granted a default judgment regarding these defendants.

{¶ 8} On September 18, 2023, Upscale filed a notice that the parties had reached an impasse regarding discovery. It complained that Trinity had refused to provide the

original note and allonges for inspection, citing the Fair Debt Collection Practices Act (FDCPA). Upscale argued that these documents were necessary to establish Trinity's standing. Trinity responded that the FDCPA prohibited providing private loan information to third parties and, because Upscale was not a party to the original loan, Trinity's counsel was prohibited from sharing the documents with Upscale's counsel. Trinity further argued that Upscale, as a third party, lacked standing to challenge the authenticity of the note and mortgage and, therefore, it appropriately provided duplicates of the documents to Upscale.

{¶ 9} After a scheduling conference, Upscale filed a motion to compel Trinity to produce the original note for inspection and to complete discovery, including the production of an accurate payment history. Trinity again responded that it was precluded by the FDCPA from producing Brenda King's private and personal loan information, among other arguments.

{¶ 10} On October 27, 2023, while the discovery issue was also being briefed, Trinity moved for summary judgment on its foreclosure claim and Upscale's counterclaims. Trinity supported its motion with an affidavit from Don A. Madden III, its president, who indicated that Trinity possessed the note, that the note was in default, that it had accelerated the obligation and sent a notice of default, and that it was entitled to a principal amount of $16,736.72 with interest at the rate of 12.05 percent from March 1, 2012, plus additional fees and advances. Madden authenticated copies of the note with indorsements (Exhibit A), the mortgage with assignments (Exhibit B), a partial payment history (Exhibit C), and the notice of default (Exhibit D).

{¶ 11} Upscale initially responded to the summary judgment motion with a Civ.R. 56(F) motion, asking the trial court to stay summary judgment proceedings until Trinity had fully complied with discovery, particularly by allowing counsel to inspect the original note, mortgage, and assignments. Ten days later, Upscale filed a memorandum opposing summary judgment. It argued that Trinity had failed to produce evidentiary-quality materials showing that it was the holder of the note and mortgage, that it was a party entitled to enforce the note, that all conditions precedent had been met, and the amount of principal and interest due. Upscale provided an affidavit from Antwon Lane, the sole member of Upscale.

{¶ 12} Seeing that Upscale had timely responded to the summary judgment motion, the trial court overruled the Civ.R. 56(F) motion as moot. The following day, Upscale filed a notice that Trinity had continued to refuse to produce the original note for inspection, stating that it "strongly believe[d]" that Trinity's refusal made summary judgment inappropriate.

{¶ 13} On February 29, 2024, the trial court granted Trinity's motion for summary judgment. It concluded that Trinity had met its initial evidentiary burden through Madden's affidavit and accompanying exhibits. The court further found that Upscale had not met its reciprocal burden to establish the existence of a genuine issue of material fact. It noted that "Upscale's unsupported assertion that the loan must have been paid in full merely because it matured in 2018 is not sufficient to withstand summary judgment." Finally, the court concluded that, because Upscale was not a party to any assignments or indorsements, it lacked standing to challenge their validity.

{¶ 14} The following day, the trial court granted a judgment and decree of foreclosure to Trinity. In setting forth the priority for distribution of the sale proceeds, the court did not include the alleged tax lien claimed by Upscale.

{¶ 15} Upscale appeals from the trial court's judgment, raising three assignments of error. The trial court has stayed its judgment pending appeal.

## II. Failure to Produce Original Note

{¶ 16} In its first assignment of error, Upscale claims that the trial court erred in granting summary judgment to Trinity because Trinity refused to produce the original note during discovery. Upscale claims that Trinity's ability to produce the original note was relevant to Trinity's standing to pursue foreclosure. We note that Upscale filed a motion to compel inspection of the original note and later asked that summary judgment proceedings be held in abeyance, pursuant to Civ.R. 56(F), until Trinity fully complied with Upscale's discovery requests. We construe Upscale's assignment of error to argue that the trial court erred in implicitly denying its motion to compel and in failing to grant its Civ.R. 56(F) motion.

{¶ 17} Civ.R. 56(F) "affords a party a mechanism whereby it can seek deferral of action on a motion for summary judgment so that it may obtain affidavits opposing the motion or conduct discovery relevant to it." *Gates Mills Inv. Co. v. Pepper Pike*, 59 Ohio App.2d 155, 168-69, 392 N.E.2d 1316 (8th Dist.1978), citing Civ.R. 56(F). Under the rule, the party opposing summary judgment must submit an affidavit explaining why it cannot "present by affidavit facts essential to justify the party's opposition" to the summary

judgment motion. *Chen v. Univ. of Dayton*, 2023-Ohio-4002, 228 N.E.3d 19, ¶ 44 (2d Dist.), citing Civ.R. 56(F). If that party submits an affidavit with sufficient reasons, the trial court may deny the summary judgment motion or may "order a continuance to permit affidavits to be obtained or discovery to be had or may make such other order as is just." *Id.*

{¶ 18} "Pursuant to Civ.R. 7(A), the grounds for a Civ.R. 56(F) motion for a continuance must be stated with particularity." *Doriott v. MVHE, Inc.*, 2d Dist. Montgomery No. 20040, 2004-Ohio-867, ¶ 40. Mere allegations requesting a continuance for the purpose of discovery are not sufficient reasons. *Id.*; *Gates Mills Inv. Co.* at 169. Rather, "[t]here must be a factual basis stated and reasons given why it cannot present facts essential to its opposition to the motion." *Doriott* at ¶ 40. While the party opposing summary judgment is not required to specify what facts it hopes to discover, the court must be convinced that there is a likelihood of discovering some such facts. *Id.* at ¶ 41. "[A] claim that the party has not completed discovery is more likely to be rejected by the court where the party has not shown some diligence in attempting discovery." *Id.*

{¶ 19} We review the trial court's determination of a Civ.R. 56(F) motion for an abuse of discretion. *Chen* at ¶ 46, citing *Johnson v. Clark Cty. Aud.*, 2020-Ohio-3201, 155 N.E.3d 199, ¶ 21 (2d Dist.). An abuse of discretion "implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 20} Upscale's Civ.R. 56(F) motion and the accompanying affidavit by its

attorney asserted that Upscale could not respond to Trinity's assertion that it was the holder of the note without viewing the original document. In his affidavit, counsel noted that Upscale's answer had alleged that "Plaintiff is not the holder of the note, and does not have the rights of a holder." He asserted that Upscale needed to inspect the note, mortgage, and assignments to confirm that Trinity was, in fact, the holder of the note with standing to prosecute the case. Counsel's affidavit further expressed that counsel believed that Madden lacked personal knowledge of the facts contained in his affidavit and thus questioned its trustworthiness.

{¶ 21} The trial court overruled Upscale's Civ.R. 56(F) motion as moot because Upscale had filed a memorandum in opposition to the summary judgment. In doing so, it also implicitly overruled the motion to compel, as the only way Trinity would further respond to Upcale's discovery request was by court order.

{¶ 22} We disagree that the discovery request was moot as a result of the filing of Upscale's memorandum in opposition to summary judgment. Upscale's opposition memorandum was replete with assertions that granting summary judgment to Trinity would be inappropriate due to Trinity's failure to comply with Upscale's discovery requests. Upscale repeatedly challenged Trinity's status as the holder of the note and mortgage and the party entitled to enforce the note, and it indicated that Trinity's refusal to produce the note and mortgage for inspection hindered Upscale's ability to support its claim.

{¶ 23} On appeal, Trinity argues that the trial court appropriately granted summary judgment without requiring inspection of the original loan documents. Trinity states that

its counsel has custody of the original note and mortgage but asserts that the FDCPA prohibits it from producing the original note and mortgage for Upscale. Specifically, it indicates that "Plaintiff's counsel" is a debt collector as it "uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or * * * regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. 1692a(6). It argues that debt collectors are prohibited from communicating about the debt with any person other than the consumer, the consumer's attorney, a consumer reporting agency, the creditor, the creditor's attorney, or the debt collector's attorney, unless the consumer has given prior consent or a court has expressly given permission to do so. 15 U.S.C. 1692c(b).

{¶ 24} Even accepting that Trinity's *counsel* either engages in debt collection as its "principal purpose" or regularly engages in debt collection, the proper question is whether *Trinity* is a debt collector, not its counsel. It is Trinity, as the plaintiff, who has the obligation to comply with applicable discovery rules.

{¶ 25} The FDCPA defines a creditor as "any person who offers or extends credit creating a debt or to whom a debt is owed, but such term does not include any person to the extent that he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt *for another*." (Emphasis added.) 15 U.S.C. 1692a(4).

{¶ 26} In *Henson v. Santander Consumer USA Inc.*, 582 U.S. 79, 82, 137 S.Ct. 1718, 198 L.Ed.2d 177 (2017), the United States Supreme Court unanimously held that

a debt purchaser may collect debts for its own account without becoming a debt collector. It reasoned:

> [B]y its plain terms this language [Section 1692a(6)] seems to focus our attention on third party collection agents working for a debt owner – not on a debt owner seeking to collect debts for itself. Neither does this language appear to suggest that we should care how a debt owner came to be a debt owner – whether the owner originated the debt or came by it only through a later purchase. All that matters is whether the [person collecting the debt] regularly seeks to collect debts for its own account or does so for "another."

*Id.* at 83. The Court further rejected the assertion that a debt collector necessarily includes anyone who regularly collects debts acquired after default. *Id.* at 87. It emphasized that, "[a]fter all and again, under the definition at issue before us you have to attempt to collect debts owed *another* before you can ever qualify as a debt collector." (Emphasis sic.) *Id.*

{¶ 27} According to the affidavit of Don A. Madden III, Trinity's president, Trinity acquired the note and mortgage from Ocwen Loan Servicing. The record does not reveal when the notes were transferred to Trinity, although the assignments of mortgage from Ocwen Loan Servicing to Trinity were dated January 27, 2014, after the loan allegedly was in default. Nevertheless, Trinity does not claim that it acquired the note and mortgage solely for the purpose of facilitating the collection of someone else's debt. To the contrary, the notice of default sent to Tony King by Robertson, Anschutz, Schneid, Crane & Partners, PLLC, in May 2022 informed Tony that the letter was from a debt

collector (the law firm) attempting to collect the debt for the "current creditor," Trinity. Trinity does not assert, nor does the record suggest, that *Trinity* is a debt collector, rather than the creditor, in this case.

**{¶ 28}** The FDCPA "is directed at independent debt collectors and not creditors attempting to collect on their own debts." *JPMorgan Chase Bank, N.A. v. Taylor*, 2d Dist. Montgomery No. 25568, 2013-Ohio-2760, ¶ 14, quoting *Bank of New York Trustee v. Damnsel*, 10th Dist. Franklin No. 00AP-46, 2006-Ohio-4071, ¶ 13. Trinity does not cite any portion of the FDCPA that limits a *creditor's* ability to allow a third-party foreclosure defendant to view the original note and mortgage. Nor do we find any support for Trinity's implicit suggestion that Trinity's choice of counsel can serve to alter its discovery obligations. Because Trinity relied exclusively on the FDCPA, we decline to address whether other statutes or regulations prohibited Trinity from allowing Upscale's counsel to inspect the original note and mortgage.

**{¶ 29}** Ohio Civ.R. 26(C) permits the trial court to enter a protective order, as justice requires, "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Trinity could have asked the trial court to limit the inspection of the original note and mortgage to defense counsel only, or to permit the Kings' personal information to be obscured while the documents were being viewed, or some other remedy to address its concerns about the disclosure of the Kings' private information. However, given that duplicates of the note and mortgage were attached to the complaint and to Madden's affidavit, each with minimal redactions, we question Trinity's suggestion that it could not accommodate Upscale's request to inspect those

documents without judicial intervention.

{¶ 30} Trinity next argues that it did not need to allow defense counsel to view the original note and mortgage, because duplicates are sufficient evidence under Evid.R. 1003. However, as expressly stated in Civ.R. 26(B)(1), the scope of discovery is not limited to evidence that is admissible at trial. That rule provides:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Trinity could not decline a proper discovery request simply because it could or would present a duplicate, rather than the original, to support its claims.

{¶ 31} Finally, Trinity emphasizes that production of the original note and mortgage was unnecessary as Upscale did not and could not challenge the authenticity of the transfers. A mortgagor does not have standing to challenge the validity of the assignments of the mortgage, because the mortgagor was not a party to the assignments. *Nationstar Mtge. LLC v. Anderson*, 2023-Ohio-3186, 224 N.E.3d 559, ¶ 17 (2d Dist.), citing *Bank of New York Mellon Trust Co. v. Unger*, 8th Dist. Cuyahoga No. 97315, 2012-

Ohio-1950, ¶ 35; *Bank of New York Mellon v. Clancy*, 2d Dist. Montgomery No. 25823, 2014-Ohio-1975, ¶ 33. Here, Upscale was not a party to the note, the mortgage, or the assignments of mortgage. Accordingly, to the extent that Upscale sought to view the original note, mortgage, and assignments to establish defects in the allonges and assignments of mortgage, Upscale's request would not lead to relevant evidence.

**{¶ 32}** However, Trinity had the obligation to establish its standing to file suit, and Upscale could challenge whether Trinity possessed the note and mortgage when the foreclosure action was filed. Trinity argues that it could pursue foreclosure even if the note and mortgage were lost, but it does not rely on that theory of standing. Rather, it has repeatedly asserted that its counsel possesses the original note and mortgage. Under the circumstances before us, the trial court abused its discretion in failing to compel Trinity to produce the original note and mortgage for inspection and in granting summary judgment to Trinity without first doing so. *See Bank of New York Mellon Tr. Co. Natl. v. Mihalca*, 9th Dist. Summit No. 25747, 2012-Ohio-567, ¶ 19 ("[W]here, as here, a plaintiff attempts to enforce a note as the holder of the note, and a defendant makes a timely demand for inspection of the original note, if the plaintiff fails to sufficiently establish its possession of the note, summary judgment may not be had in favor of the plaintiff.").

**{¶ 33}** Upscale's first assignment of error is sustained.

### III. Trinity's Entitlement to Summary Judgment

**{¶ 34}** Upscale's second assignment of error claims that the trial court's grant of summary judgment was inappropriate given Trinity's failure "to produce 'evidentiary-quality materials' showing that a judgment for foreclosure was warranted."

**A. Summary Judgment Standard**

{¶ 35} Pursuant to Civ.R. 56(C), summary judgment is proper when (1) there is no genuine issue as to any material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds, after construing the evidence most strongly in favor of the nonmoving party, can only conclude adversely to that party. *Zivich v. Mentor Soccer Club, Inc.*, 82 Ohio St.3d 367, 369-370, 696 N.E.2d 201 (1998). The moving party carries the initial burden of affirmatively demonstrating that no genuine issue of material fact remains to be litigated. *Mitseff v. Wheeler*, 38 Ohio St.3d 112, 115, 526 N.E.2d 798 (1988). To this end, the movant must be able to point to evidentiary materials of the type listed in Civ.R. 56(C) that a court is to consider in rendering summary judgment. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293, 662 N.E.2d 264 (1996). The substantive law of the claim or claims being litigated determines whether a fact is "material." *Perrin v. Cincinnati Ins. Co.*, 2020-Ohio-1405, 153 N.E.3d 832, ¶ 29 (2d Dist.).

{¶ 36} Once the moving party satisfies its burden, the nonmoving party may not rest upon the mere allegations or denials of the party's pleadings. *Dresher* at 293; Civ.R. 56(E). Rather, the burden then shifts to the nonmoving party to respond, with affidavits or as otherwise permitted by Civ.R. 56, setting forth specific facts that show that there is a genuine issue of material fact for trial. *Dresher* at 293. Throughout, the evidence must be construed in favor of the nonmoving party. *Id.*

{¶ 37} We review the trial court's ruling on a motion for summary judgment de novo. *Schroeder v. Henness*, 2d Dist. Miami No. 2012-CA-18, 2013-Ohio-2767, ¶ 42.

De novo review means that this court uses the same standard that the trial court should have used, and we examine all the Civ.R. 56 evidence, without deference to the trial court, to determine whether, as a matter of law, no genuine issues exist for trial. *Ward v. Bond*, 2d Dist. Champaign No. 2015-CA-2, 2015-Ohio-4297, ¶ 8.

{¶ 38} To prevail on a motion for summary judgment in a foreclosure action, the plaintiff must prove: (1) it is the holder of the note and the mortgage, or is a party entitled to enforce them; (2) if the plaintiff is not the original mortgagee, the chain of assignments and transfers; (3) the mortgagor is in default; (4) all conditions precedent have been met; and (5) the amount of principal and interest due. *Carrington Mtge. Servs., LLC v. McClain*, 2023-Ohio-2211, 221 N.E.3d 132, ¶ 18 (2d Dist.); *U.S. Bank Natl. Assn. v. Clarke*, 2d Dist. Greene No. 2023-CA-29, 2024-Ohio-278, ¶ 15. Upscale challenges Trinity's evidence on each of these elements.

### B. Affidavit Based on Personal Knowledge

{¶ 39} Upscale first asserts that Madden's affidavit was not based on personal knowledge.

{¶ 40} To authenticate a business record under Evid.R. 803(6), an affiant must demonstrate that: (1) the record was prepared by an employee of the business who had a duty to report the information; (2) the affiant had personal knowledge of the event or transaction reported; (3) the record was prepared at or near the time of the event or transaction; and (4) the business created such records as a regular practice. *E.g.*, *U.S. Bank Trust Natl. Assn. v. Phann*, 2023-Ohio-2214, 220 N.E.3d 1001, ¶ 31 (2d Dist.); *U.S. Home Ownership, LLC v. Young*, 2018-Ohio-1059, 109 N.E.3d 681, ¶ 11 (2d Dist.), citing

*State v. Richardson*, 2016-Ohio-8081, 75 N.E.3d 831, ¶ 39 (2d Dist.).

**{¶ 41}** If "particular averments contained in an affidavit suggest that it is unlikely that the affiant has personal knowledge of [the corresponding] facts, then * * * something more than a conclusory averment that the affiant [actually] has [personal] knowledge of the facts [is] required." *Young* at ¶ 12, quoting *Merchants Natl. Bank v. Leslie*, 2d Dist. Clark No. 3072, 1994 WL 12433, *2 (Jan. 21, 1994).

**{¶ 42}** In his affidavit, Madden indicated that he was the president of Trinity and, "in this position, I have reviewed certain business files, documents and other business records of Plaintiff's account for Brenda King ('the Borrower(s)')." He averred that he was authorized to execute the affidavit and was competent to testify to his statements. He further stated, in part:

3. In the regular performance of my aforementioned job duties, I am familiar with business records maintained by the Plaintiff for the purpose of servicing mortgage loans and have access to the Plaintiff's business records, including the business records for and relating to the Borrower(s)'s loan. I make this affidavit based upon my review of those records relating to the Borrower(s)' loan and from my own personal knowledge of how the business records are kept and maintained.

4. Based on my knowledge [of] the Plaintiff's business practices, the entries in these records (which include data compilations, electronic image documents, and others) are made at the time of the events and conditions they describe, either by people with firsthand knowledge of those events

and conditions or from information provided by people with such firsthand knowledge. It is the Plaintiff's business practice to electronically store duplicates of the originals of all notes or other debt instruments, endorsements, alonges, mortgages, and assignments thereof and is the regular practice to keep such records in the ordinary course of a regularly conducted business activity.

Madden then provided information about Trinity's possession of the note, the status of the loan, and Trinity's actions regarding the default. He also authenticated copies of the note with indorsements, the mortgage and assignments of mortgage, a partial payment history, and the notice of default.

{¶ 43} Madden's affidavit established that he had personal knowledge of and had reviewed Trinity's business records related to Brenda King's loan. His averments were sufficient to demonstrate personal knowledge of his statements.

**C. Holder of the Note and Mortgage and Chain of Assignments**

{¶ 44} Upscale next argues that Madden's affidavit and the accompanying exhibits were insufficient to demonstrate Trinity's entitlement to enforce the note and mortgage.

{¶ 45} A foreclosure proceeding enforces a debt obligation, which is established by the note. *U.S. Bank Natl. Assn. for Registered Holders of GE Commercial Mtge. Corp., Commercial Mtge. Pass-Through Certificates, Series 2006-C1 v. Courthouse Crossing Acquisitions, LLC*, 2017-Ohio-9231, 101 N.E.3d 1243, ¶ 12 (2d Dist.). The party entitled to enforce the note may pursue foreclosure regardless of whether it can obtain a personal judgment against the obligors. *See Deutsche Bank Natl. Tr. Co. v.*

*Holden*, 147 Ohio St.3d 85, 2016-Ohio-4603, 60 N.E.3d 1243.

{¶ 46} "In foreclosure actions, the real party in interest is the current holder of the note and mortgage." (Citation omitted.) *HSBC Bank USA v. Thompson*, 2d Dist. Montgomery No. 23761, 2010-Ohio-4158, ¶ 45. The Ohio Supreme Court has made clear that a "creditor seeking to foreclose on the mortgage must prove that it was the person or entity entitled to enforce the note secured by the mortgage." *Holden* at ¶ 26.

{¶ 47} "R.C. 1303.31(A) identifies three classes of persons who are 'entitled to enforce' an instrument, such as a note: (1) the holder of the instrument, (2) a nonholder in possession of the instrument who has the rights of a holder, and (3) a person not in possession of the instrument who is entitled to enforce the instrument pursuant to R.C. 1303.38 or R.C. 1303.58(D)." *Wells Fargo Bank, N.A. v. TIC Acropolis, L.L.C.*, 2d Dist. Greene No. 2015-CA-32, 2016-Ohio-142, ¶ 29. The term "holder" includes a "person in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession." R.C. 1301.201(B)(21)(a).

{¶ 48} "Although the lender is required to establish standing in order to meet its burden of proof in a foreclosure action, the borrower's ability to challenge standing by attacking the assignment is limited." *Wells Fargo Bank, N.A. v. Scott*, 2d Dist. Montgomery No. 26552, 2015-Ohio-3269, ¶ 17. As stated above, a mortgagor lacks standing to challenge the validity of the assignments of the mortgage, because the mortgagor was not a party to the assignments. *E.g.*, *Anderson*, 2023-Ohio-3186, 224 N.E.3d 559, at ¶ 17; *Clancy*, 2d Dist. Montgomery No. 25823, 2014-Ohio-1975, ¶ 33. We have reasoned that the assignments do not alter the borrower's obligations under the

note or mortgage. *Id.*

**{¶ 49}** In this case, Madden provided "duplicate, true and accurate" copies of the note and mortgage "as they exist in the Plaintiff's records." The note was stamped with several indorsements, which reflected transfers from Mortgage Electronic Registration Systems, Inc. (MERS), as nominee for Aegis Lending, to Aegis Mortgage Corporation; from Aegis Mortgage Corporation to Residential Funding Corporation; and from Residential Funding Corporation to JP Morgan Chase Bank, as Trustee. An allonge attached to the note transferred it from JP Morgan Chase Bank, as Trustee, to Ocwen Loan Serving. A second allonge transferred the note from Ocwen Loan Serving to Trinity Financial Services. On their face, the note and allonges contain no gaps in the chain of custody of the note and demonstrate that Trinity is the current holder of the note.

**{¶ 50}** The mortgage also went through a series of assignments. In 2012, the mortgage was assigned by MERS, as nominee for Aegis Lending, to The Bank of New York Mellon Trust Company (successor to JP Morgan Chase Bank). On January 27, 2014, the bank assigned the mortgage to Ocwen Loan Servicing, which immediately assigned it to Trinity. The assignment from the Bank of New York to Ocwen was recorded on May 7, 2021, and the assignment to Trinity was recorded three days later. Collectively, the note, mortgage, and assignments of mortgage indicate that Trinity was the holder of the note and mortgage when the complaint was filed.

**{¶ 51}** In opposing summary judgment and on appeal, Upscale asserts that there were defects in the allonges, including alleged self-dealing by Ocwen Loan Servicing when Ocwen, acting as attorney in fact for Bank of New York Mellon, transferred the note

from the bank to itself. However, Upscale does not have standing to challenge this transaction or any other transfer of the note and mortgage.

{¶ 52} Putting aside for the moment Upscale's claim that it needed to inspect the original note to challenge Trinity's standing, Upscale presented no evidence that raised questions about whether Exhibits A and B to Madden's affidavit were true and accurate copies of the note, mortgage, and assignments of mortgage. Accordingly, the duplicate copies were proper evidence of the note, mortgage, and assignments of mortgage for purposes of resolving the summary judgment motion. *See* Evid.R. 1003.

{¶ 53} Madden stated in his affidavit that, "[a]t the time of the filing of the complaint in the above-referenced action, the Plaintiff, by and through its records custodian, had and has been in possession of a certain promissory note ('the Note') executed by the Borrower(s) in the amount of $25,500.00." Madden Aff., ¶ 5. Madden further indicated that Trinity "has not transferred possession of the Note." Madden Aff., ¶ 6. Trinity's answers to Upscale's interrogatories, which Lane attached to his affidavit, also stated that Trinity was in possession of the original note, mortgage, assignments, and alonges. Lane Aff., Ex. A, Interrogatory No. 8.

{¶ 54} Madden averred in his affidavit that it is Trinity's business practice "to electronically store duplicates of the originals of all notes or other debt instruments, endorsements, allonges, mortgages, and assignments thereof and is the regular practice to keep such records in the ordinary course of a regularly conducted business activity." Madden Aff., ¶ 4. While this paragraph, read in isolation, may suggest that Trinity only possesses duplicates of the loan documents, Madden's affidavit as a whole and Trinity's

interrogatory response are evidence that Trinity possessed the original documents and provided accurate copies. With the evidence before it, the trial court properly found no genuine issue of material fact that Trinity was the holder of the note and mortgage.

{¶ 55} Nevertheless, as we concluded above, Upscale should have been afforded an opportunity to view the original note to verify that Trinity, in fact, had possession of the document. It follows that Upscale also should have been given an opportunity to present additional evidence relevant to Trinity's standing to file its foreclosure action. Accordingly, the trial court's ruling on whether Trinity was the holder of the original note was premature.

### D. Conditions Precedent

{¶ 56} Upscale next argues that Trinity failed to present evidence that it complied with all conditions precedent. Upscale emphasizes that Brenda King, alone, was the borrower on the note. It therefore contends that, because Brenda was deceased, Trinity was required to send a notice of default to her estate. Because Trinity failed to serve a notice of default on the proper party, Upscale argues, Trinity failed to comply with all conditions precedent.

{¶ 57} The plaintiff in a foreclosure action must prove that all conditions precedent have been met to meet its burden of proof for summary judgment. *JPMorgan Chase Bank, N.A. v. Chenoweth*, 2d Dist. Montgomery No. 25923, 2014-Ohio-3507, ¶ 20; *Huntington Natl. Bank v. Payson*, 2d Dist. Montgomery No. 26396, 2015-Ohio-1976, ¶ 18. We have held that "[w]here prior notice of default and/or acceleration is required by a provision in a note or mortgage instrument, the provision of notice is a condition

precedent." *Scott*, 2d Dist. Montgomery No. 26552, 2015-Ohio-3269, at ¶ 19, quoting *First Fin. Bank v. Doellman*, 12th Dist. Butler No. CA2006-02-09, 2007-Ohio-222, ¶ 20; *Wells Fargo Bank, N.A. v. Mears*, 2d Dist. Montgomery No. 27995, 2019-Ohio-242, ¶ 34. *Contrast Wells Fargo Bank, N.A. v. Goebel*, 2014-Ohio-472, 6 N.E.3d 1220 (2d Dist.) (noncompliance with the face-to-face meeting requirement in 24 C.F.R. 203.604 was an affirmative defense, not a condition precedent, to foreclosure).

**{¶ 58}** In this case, both the note and mortgage required notice of default. Paragraph 4 of the note (entitled Borrower's Failure to Pay as Required) provided, in part: "If I do not pay the full amount of each monthly payment on time, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date I will be in default." Note, ¶ 4(B). Paragraph 4(C) (Default) further stated, in part: "If I do not pay the overdue amount by the date stated in the notice described in (B) above, I will be in default. If I am in default, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount." The mortgage required the lender to provide the borrower, prior to acceleration, a notice specifying (1) the breach, (2) the action required to cure the breach, (3) the date by which the breach must be cured, and (4) that failure to cure may result in acceleration, foreclosure, and the sale of the property. Mortgage, ¶ 17 (Acceleration; Remedies).

**{¶ 59}** Here, Trinity did not meet its initial summary judgment burden of demonstrating compliance with its obligation to send a notice of default to the borrower prior to foreclosure. The borrower in this case was Brenda King. *See* Madden Aff., Ex.

A (Note). Madden stated in his affidavit that "Plaintiff has satisfied all conditions precedent pursuant to the Note and Mortgage" – a statement that, alone, may have been sufficient to meet Trinity's evidentiary burden. However, Madden supported that statement with a copy of the notice of default (Exhibit D), which showed that the notice was mailed to Tony King, not to Brenda. In reviewing whether Trinity met its initial burden, we must consider all of the evidence it provided. In this case, the attached notice of default, on its face, raised questions about whether Trinity satisfied that condition precedent. *See Mears*, 2d Dist. Montgomery No. 27995, 2019-Ohio-242 (although an affidavit in support of summary judgment in foreclosure case indicated that plaintiff had received HUD approval to file foreclosure, an attached letter created a genuine issue of material fact).

**{¶ 60}** Trinity provided no additional evidence demonstrating that Madden's Exhibit D satisfied its obligation to send a notice of default. Trinity's complaint, filed in March 2023, indicated that Brenda was then-deceased, but there is nothing in the record to indicate when Brenda died or, more specifically, whether she was alive on May 10, 2022, when the notice of default was sent. Even assuming Brenda was deceased on May 10, 2022, Trinity has provided no evidence that Tony was the proper party to receive the notice of default upon Brenda's death. Moreover, even if notice to a surviving spouse were adequate (the original mortgage, executed in 2003, identified Brenda and Tony as husband and wife), the parties have provided no information regarding the status of their relationship when Brenda died. In short, Exhibit D to Madden's affidavit created a genuine issue of material fact as to whether Trinity did, in fact, comply with the condition

precedent to send a notice of default.

{¶ 61} In its appellee's brief, Trinity asserts that Upscale has waived any challenge to Trinity's compliance with conditions precedent on two grounds. First, it asserts that Upscale did not raise the issue in the trial court and cannot raise it for the first time on direct appeal. Second, it argues that Upscale's answer failed to plead with particularity its denial of compliance with conditions precedent, as required by Civ.R. 9(C), and therefore Trinity's compliance with conditions precedent was deemed admitted under Civ.R. 8(D).

{¶ 62} The record belies Trinity's assertion that Upscale did not contest Trinity's compliance with the conditions precedent in the trial court. Upscale's memorandum opposing summary judgment claimed that Trinity had failed to satisfy all conditions precedent, arguing that the notice of default (Exhibit D to Madden's affidavit) was unsigned and could not be authenticated and, further, that it was not sent to the appropriate party, the estate of Brenda King. Upscale summarized: "Plaintiff has failed to abide by Ohio probate law, the said Notice was ineffective, and the Plaintiff has failed to comply with all conditions precedent." Upscale's Summary Judgment Opposition Mem., p. 15. Trinity did not respond to Upscale's arguments in its reply memorandum.

{¶ 63} We question the extent to which Upscale, which was neither a party to the note and mortgage nor a third-party beneficiary of those documents, could challenge evidence showing Trinity's compliance with conditions precedent. Regardless, because Trinity did not raise this issue either in the trial court or on appeal and, further, because Trinity's own evidence created a genuine issue of material fact, we need not reach it.

**{¶ 64}** As for Trinity's argument that Upscale admitted to Trinity's compliance with conditions precedent through the application of Civ.R. 9(C) and Civ.R. 8(D), we conclude that this issue is not properly before us. Trinity did not raise the application of those rules in the trial court, and the trial court never made a specific finding regarding whether Trinity satisfied conditions precedent. *See* Order Sustaining Motion for Summary Judgment, p. 4-5. Although the trial court found that Trinity "met its initial evidentiary burden on summary judgment," it expressly found only that Madden's affidavit established that Trinity "is and has been the holder in possession of the Note and Mortgage and the party entitled to enforce the same, that the loan is in default, that the defaulted loan has been called due, and sets forth the balance due and owing thereon." *See id.*, p. 5. We conclude that it is more appropriate for Trinity to raise the application of Civ.R. 8(D) and 9(C) on remand. We note that Trinity did not provide Upscale a copy of the notice of default prior to moving for summary judgment. Nothing in this opinion precludes Upscale from seeking to amend its answer, if it wishes, on remand.

### E. Existence of Default and Amount of Principal and Interest Due

**{¶ 65}** Finally, Upscale argues that Trinity failed to present evidence establishing that the loan was in default and of the amount of principal and interest due.

**{¶ 66}** "An affidavit stating that the plaintiff is the owner of the note and mortgage and that the loan is in default generally is sufficient to permit a trial court to enter summary judgment and order foreclosure, unless there is evidence that controverts the averments." *JP Morgan Chase Bank, N.A. v. Johnson*, 2d Dist. Champaign No. 2014-CA-27, 2015-Ohio-1939, ¶ 10; *Wells Fargo Fin. Ohio 1, Inc. v. Robinson*, 2d Dist. Champaign No. 2016-

CA-23, 2017-Ohio-2888, ¶ 17. Moreover, we have held that a plaintiff does not need to provide a complete payment history from the origination of the loan to establish its entitlement to summary judgment in a foreclosure case. *Anderson*, 2023-Ohio-3186, 224 N.E.3d 559, at ¶ 23; *see also MorEquity, Inc. v. Gombita*, 2018-Ohio-4860, 125 N.E.3d 300, ¶ 44 (8th Dist.).

**{¶ 67}** Madden's affidavit averred that the terms of the note had been breached, that Trinity had elected to call the entire balance due, and that the default has not been cured. Madden Aff., ¶ 7, 10. He further stated that $16,736.72 was due with interest at a rate of 12.05 percent per annum from March 1, 2012. *Id.*, ¶ 8. Madden attached a partial payment history report, which began with April 1, 2012. The report reflected that no payments on the note had been received from April 1, 2012, to November 1, 2018. For each of those 80 months, the principal amount was listed as $16,736.72. The report showed missed payments totaling $24,548.80 during that period, late charges of $1,227.20, and attorney fees of $6,085.12, for a total reinstatement amount of $31,851.22 as of November 9, 2023.

**{¶ 68}** In opposing summary judgment, Lane stated in his affidavit that when Upscale acquired the property, it was his "understanding that the loan was paid in full." Lane Aff., ¶ 18. Lane provided no details about why he believed that, nor did he provide any documentary evidence demonstrating that the loan had been paid in full.

**{¶ 69}** Madden's affidavit established that Brenda's loan was in default, and Lane's affidavit was not sufficient to raise a genuine issue of material fact. The note provided an interest rate of 12.05 percent, and it required Brenda to pay all amounts due on the

note, in full, on November 1, 2018, if any amounts remained owing. Trinity's payment history showed that $16,736.72 in principal remained due on November 1, 2018, and that no money had been applied to any of the missed payments between November 1, 2018 and when the payment history was printed in 2023. Trinity's evidence was sufficient to establish the amount of principal and interest due.

{¶ 70} In summary, based on the evidence before the trial court, we find that a genuine issue of material fact exists regarding whether Trinity satisfied all conditions precedent before filing its complaint for foreclosure. Moreover, the trial court's ruling on whether Trinity possessed the original note was premature, because Upscale should have been given an opportunity to view the original note and, if appropriate, present additional evidence regarding Trinity's status as the holder of the note. Accordingly, the trial court erred in granting summary judgment to Trinity on its foreclosure claim. Upscale's second assignment of error is sustained.

### IV. Lien Priority

{¶ 71} Upscale's third assignment of error challenges the trial court's failure to give Upscale's lien "the proper priority on account of their payment of delinquent real estate taxes." Considering our disposition of Upscale's first and second assignments of error, its third assignment of error is overruled as moot.

### V. Conclusion

{¶ 72} The trial court's judgment will be reversed, and the matter will be remanded for further proceedings.

. . . . . . . . . . . . .

TUCKER, J. and LEWIS, J., concur.